**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 18 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

No. 99-3106

DONALD RAY BROOMFIELD,

     Defendant-Appellant.

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 98-CR-40021-1)**

---

Gregory G. Hough (Jackie N. Williams, United States Attorney, with him on the brief), Assistant United States Attorney, Topeka, Kansas, for Plaintiff-Appellee.

Charles D. Dedmon (David J. Phillips, Federal Public Defender, with him on the brief), First Assistant Federal Public Defender, Topeka, Kansas, for Defendant-Appellant.

---

Before **SEYMOUR, BALDOCK** and **BRORBY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

     Mr. Donald Broomfield appeals his conviction on one count of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1). He

raises two issues on appeal. First, he claims the district court erred in failing to suppress evidence seized during a bus interdiction at the Greyhound Bus Terminal in Topeka, Kansas. Second, he claims he was denied a constitutionally fair trial because the prosecutor vouched for the truthfulness of the government's witnesses during closing argument. Exercising jurisdiction pursuant to 28 U.S.C. §1291, we affirm Mr. Broomfield's conviction.

BACKGROUND

Mr. Broomfield boarded a Greyhound bus at 11:00 p.m. on March 2, 1998, in Los Angeles, California. He changed buses in Denver, Colorado, and proceeded through Colorado and into Kansas. On arriving in Topeka, Kansas, at approximately 11:05 a.m. on March 3, the passengers, including Mr. Broomfield, were permitted to leave the bus to stretch their legs, smoke or use the restroom. Mr. Broomfield chose to remain on the bus. After all the passengers who wanted to exit the bus had done so, Drug Enforcement Administration Special Agent Walt Thrower boarded the bus and walked directly to the rear to speak with passengers regarding their travel.

Mr. Broomfield was seated in the rear bench seat on the driver's side of the bus, immediately adjacent to the restroom. The bench seat has room for three

passengers.  An unidentified woman sat next to him, closest to the aisle.  When he got to the back of the bus, Agent Thrower identified himself to Mr. Broomfield, both verbally and by showing his badge.  When Agent Thrower asked if he could speak with him, Mr. Broomfield agreed.  Agent Thrower did not advise Mr. Broomfield he could decline to talk to him.

Standing in the aisle between Mr. Broomfield's seat and the restroom, Agent Thrower asked Mr. Broomfield where he was traveling from.  Mr. Broomfield replied Los Angeles.  When asked where he was going, Mr. Broomfield responded St. Louis.  Mr. Broomfield said he planned to stay in St. Louis for about a week.  Agent Thrower then asked Mr. Broomfield if he had any bags, pointing to the overhead rack.  Mr. Broomfield grabbed a burgundy-colored Wilson gym bag that sat next to him on the seat.  He denied having any additional baggage.  Mr. Broomfield then presented his ticket to Agent Thrower, who confirmed the itinerary was Los Angeles, California, to St. Louis, Missouri, and then returned the ticket to Mr. Broomfield.

Agent Thrower knew the bus trip to St. Louis from Los Angeles was approximately two days coming and two days going.  Based on his training and experience, Agent Thrower knew Mr. Broomfield's small gym bag was

insufficient for such a trip, including a one-week stay in St. Louis, but was consistent with a quick turn-around trip to deliver controlled substances. Accordingly, Agent Thrower proceeded to ask Mr. Broomfield if he packed the gym bag. Mr. Broomfield replied that he had. (When asked if he had any guns or drugs in the bag, Mr. Broomfield said no. Agent Thrower then asked if he could search the bag. Mr. Broomfield replied "sure."

Agent Thrower placed the bag in the first vacant seat on the passenger side, as the seat next to Mr. Broomfield was occupied. Inside the bag, Agent Thrower discovered a white sock, balled-up, with a hard object inside. While still holding the sock, Agent Thrower noticed Mr. Broomfield was visibly nervous. He was moving his hands and arms beneath the rear of the seat in front of him and his eyes were tearing. For safety purposes, Agent Thrower asked Mr. Broomfield to place his hands on the top of the seat in front of him where Agent Thrower could see them. Agent Thrower proceeded to open the sock and found an object covered with masking tape. Beneath the masking tape and multiple layers of plastic bags and wrappings were several small plastic bags containing a hard off-white rock substance. Based on his training and experience, Agent Thrower believed the substance to be crack cocaine.

Agent Thrower arrested Mr. Broomfield, handcuffed him, and escorted him off the bus. Two Shawnee County deputies standing outside, near the bus, but not visible to Mr. Broomfield from his seat, helped Agent Thrower escort Mr. Broomfield into the cargo area of the bus depot. Agent Thrower advised Mr. Broomfield of his Miranda rights and asked Mr. Broomfield if he would like to talk with him about the crack cocaine. Mr. Broomfield stated that the socks containing the cocaine were his, and that he was traveling to St. Louis to help his niece, Shyndona Dickerson, drive a car back to Los Angeles.

Drug Enforcement Agency experts tested the substance found in the sock and identified it as 139.9 grams of cocaine base. They identified fingerprints found on the plastic wrapping containing the cocaine as Shyndona Dickerson's. Further investigation ultimately resulted in a two-count indictment charging both Mr. Broomfield and Ms. Dickerson with (1) possession with intent to distribute crack cocaine, and (2) conspiracy to possess with intent to distribute crack cocaine. Ms. Dickerson pleaded guilty to the conspiracy count and testified against Mr. Broomfield.

After hearing the evidence, including Ms. Dickerson's testimony concerning her prior drug conviction and her arrangement with Mr. Broomfield

to deliver crack cocaine to Vincent "Marlo" Grimes for sale and distribution in St. Louis, the jury acquitted Mr. Broomfield of conspiracy, but convicted him of possession with intent to distribute cocaine. This appeal followed the district court's denial of Mr. Broomfield's post-trial motion for a judgment of acquittal or a new trial.

## ANALYSIS

### Suppression of Evidence - Bus Interdiction

Mr. Broomfield claims his consent to search the gym bag was not voluntary and the search was unreasonable because, taking into account all of the circumstances surrounding his encounter with Agent Thrower, a reasonable person in the same situation would not have felt free to decline Agent Thrower's search request or otherwise terminate the encounter. He argues the district court therefore erred by denying his motion to suppress. He seeks a new trial without the evidence seized as a result of the search.

When reviewing a motion to suppress ruling, "we review de novo the ultimate determination of Fourth Amendment reasonableness." *United States v. Little*, 60 F.3d 708, 712 (10th Cir. 1995). Certainly, however, the credibility of the witnesses and the weight given to the evidence presented at the motion

hearing, as well as the inferences and conclusions drawn therefrom, remain matters for the trial judge. *Id*. Where, as here, there are no express factual findings, we uphold the district court's ruling if there is any reasonable view of the evidence to support it. *United States v. Gonzalez-Acosta*, 989 F.2d 384, 387 (10th Cir. 1993) (quotation marks and citations omitted).

Mr. Broomfield relies on the following circumstances to demonstrate the involuntariness of his consent: (1) the cramped confines of bus travel, exacerbated by the fact he was sitting in the back seat with no clear path to or along the aisle during the encounter; (2) the fatigue and general discomfort experienced by cross-country bus travelers; (3) his trip did not terminate in Topeka; (4) Agent Thrower displayed his badge; and (5) Agent Thrower did not act to defuse the anxiety of the situation or in any way advise him he had a right to refuse consent. Mr. Broomfield argues no reasonable person would feel free to refuse a search request under these circumstances; thus, his consent to search was not voluntary. In support of his argument, Mr. Broomfield cites two Eleventh Circuit bus cases, *United States v. Washington*, 151 F.3d 1354 (11th Cir. 1998) and *United States v. Guapi*, 144 F.3d 1393 (11th Cir. 1998), and draws a loose analogy to a Tenth Circuit train case, *United States v. Little*, 18 F.3d 1499 (10th Cir. 1994) (*en banc*).

First, we must agree with Mr. Broomfield that an analogy to *Little* is difficult, at best. While Ms. Little did occupy a small roomette on a train, she did not consent to the search of her bag when encountered by a Drug Enforcement Administration agent in the roomette. Rather, she agreed to accompany the agent to the baggage area of the train, where she declined to consent to a search of her bag. Ms. Little was arrested based on the alert response of a trained narcotics dog to her luggage. *Little*, 18 F.3d at 1501-02. These, among numerous other differences, make *Little* factually distinguishable.

*Little* does, however, articulate the applicable test to determine whether Mr. Broomfield's encounter with Agent Thrower was consensual:

> "[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter."

*Little*, 18 F.3d at 1503 (quoting *Florida v. Bostick*, 501 U.S. 429, 439 (1991)). We note Mr. Broomfield does not dispute the application of this objective, fact specific test. He simply argues the test as applied to the facts of his case demonstrate he did not voluntarily consent to the search. Having carefully studied the record, we must disagree.

In *Bostick*, a bus interdiction case much like this one, the Supreme Court deemed the following factors relevant to the Fourth Amendment reasonableness determination: (1) whether the agent advised the defendant he had the right to refuse consent, (2) whether the agent in any way threatened the defendant ( *i.e.*, the display of a weapon and/or the nature of the questioning), and (3) the particular location of the encounter. 501 U.S. at 436-37; *see also United States v. Hill*, ___ F.3d ___, ___, 1999 WL 1243093 *4 (10th Cir. Dec. 21, 1999) (factors relevant to whether a reasonable person would feel free to terminate an encounter with police include "the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects such as identification and plane or bus tickets; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed place; and absence of other members of the public." (Quotation marks and citations omitted.)). No one factor is dispositive. *Bostick*, 501 U.S. at 439; *Hill*, ___ F.3d at ___, 1999 WL 1243093 at *4. Rather, we must "tak[e] into account all of the circumstances surrounding the encounter" to determine whether "the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Bostick*, 501

U.S. at 436, 439 (quotation marks and citation omitted). Any analysis approaching a per se rule in this as in other Fourth Amendment contexts is prohibited. *Id*. at 439-40 (rejecting a per se rule that searches within the confines of a bus are unconstitutional); *see also Ohio v. Robinette*, 519 U.S. 33 (1996) (rejecting a per se rule that officers must inform a lawfully seized defendant of his right to refuse before asking for consent to search his vehicle).

While we understand the restriction of movement, fatigue and anxiety Mr. Broomfield undoubtedly experienced during the Topeka bus interdiction, this is not a case like *Guapi*, in which two officers, one of whom was in uniform, boarded the bus before the passengers could exit. Moreover, in *Guapi*, the uniformed officer announced to all the passengers that the officers wished to check on-board cargo for contraband and told the passengers that "[w]ith [their] consent and cooperation" he would like for them to open their on-board luggage for inspection. He then proceeded to conduct searches from the front toward the back of the bus while the second officer remained at the front of the bus, thereby creating the impression a passenger would be prevented from exiting the bus until he complied with the officers' request to search luggage. 144 F.3d at 1393-94. These circumstances understandably warranted a finding of coercion.

In contrast, the record in this case reflects that passengers who desired to leave the bus did so; only then did Agent Thrower board the bus, alone. Agent Thrower testified he was dressed casually and proceeded to the back of the bus, not because he had targeted Mr. Broomfield, but because that was what he had been trained to do. Certainly, beginning at the back of the bus would avoid the situation criticized in *Guapi* by creating a clear path for any passenger who wanted to exit the bus after the agent boarded to do so. For better or worse, Mr. Broomfield sat at the very rear of the bus -- his freedom of movement was the natural result of his choice of transportation and seat assignment, not a result of Agent Thrower's conduct. *See Bostick*, 501 U.S. at 436.

Agent Thrower further testified he spoke to Mr. Broomfield individually, and, while he displayed his badge and did not inform Mr. Broomfield of his right to refuse consent, he spoke to him in an even tone of voice, returned his ticket within a short period of time, and made no coercive or threatening gestures or comments. He carried a gun, but it was not visible to Mr. Broomfield or the other passengers who remained on the bus. Agent Thrower observed that prior to consenting to the search, Mr. Broomfield did not appear to be suffering from a mental disease or defect, to be under the influence of alcohol or drugs, or under any type of coercion or distress. Agent Thrower admitted that due to the seating

arrangement at the rear of the bus, Mr. Broomfield would have had to step in front of the woman seated next to him and pass behind him if he wanted to exit the bus. However, those space constraints were an inherent aspect of Mr. Broomfield's chosen mode of transportation. There is no evidence Agent Thrower's conduct or position on the bus conveyed the message that compliance with his requests was required.

We recognize the Eleventh Circuit relied significantly on the fact the officers in *Guapi* and *Washington* did not specifically inform individual passengers they had a right to refuse consent. Indeed, in our opinion, that factor was dispositive in *Washington*, thus creating a per se rule that authorities must notify bus passengers of the right to refuse consent before questioning those passengers and asking for consent to search luggage. *See Washington*, 151 F.3d at 1357-58 (Black, Circuit Judge, dissenting). Although we agree such notification is a relevant fact to consider, it cannot be dispositive of the reasonableness inquiry. *See id.* at 1358; *Bostick*, 501 U.S. at 439. As the dissent in *Washington* noted, "[s]hort of telling the passengers of the right to refuse consent, it is difficult to conceive of any actions the[] officers could have taken to make th[e] search any more reasonable." *Washington*, 151 F.3d at 1358 (Black, Circuit Judge, dissenting). This result renders the soundness of the

*Washington* opinion questionable.

It is similarly difficult to imagine how authorities could ever conduct a reasonable search under the circumstances Mr. Broomfield relies on to prove coercion, unless we establish a per se rule that authorities must either notify bus passengers they have the right to refuse consent or, due to the unavoidable space constraints, refrain altogether from questioning passengers seated in the far rear seat. Either approach might arguably constitute good policy; however, imposing such a rule would transgress Supreme Court precedent. The location of the encounter is but one factor in the totality of the circumstances, and, under the totality of Mr. Broomfield's circumstances, the bus setting as a whole and the details of Agent Thrower's actions do not indicate coercion. Moreover, there is nothing unlawful about the practice of approaching individuals and asking them potentially incriminating questions, *Bostick*, 501 U.S. at 439, and there is no per se rule requiring law enforcement officials to specifically advise those individuals they do not have to answer police questions. *Hill*, ___ F.3d at ___, 1999 WL 1243093 at *5; *Little*, 18 F.3d at 1505. For these reasons, we believe the evidence supports the district court's denial of Mr. Broomfield's motion to suppress evidence, and conclude Agent Thrower's search was reasonable under the totality of the circumstances.

Prosecutorial Misconduct

Mr. Broomfield claims the district court erred by failing to sustain an objection to the government's closing argument, which he says impermissibly offered personal opinion as to the truthfulness of its witnesses, Agent Thrower and Shyndona Dickerson. Mr. Broomfield characterizes this issue as a mixed question of fact and law subject to de novo review.

We begin our analysis of this claim by clarifying the appropriate standard of review. In the context of this case, because Mr. Broomfield contemporaneously objected to the prosecutor's closing argument statements, and subsequently unsuccessfully moved for a new trial based, in part, on allegations of prosecutorial misconduct, he is not entitled to a de novo ruling on the prosecutorial misconduct objection. Rather, we review the district court's denial of Mr. Broomfield's motion for a new trial for an abuse of discretion. *United States v. Villa-Chaparro*, 115 F.3d 797, 803 (10th Cir.), *cert. denied*, 522 U.S. 926 (1997). Applying this standard, we conclude the district court did not abuse its discretion.

The statements Mr. Broomfield challenges were made during the government's rebuttal argument, when, in response to defense counsel's closing

-14-

argument that "this is a case about perjury," and repeated characterization of Ms. Dickerson's testimony as "lies", the prosecutor told the jury:

> The criminal justice system that you're a part of as jurors in this case is not a perfect system, but I submit to you it's the best system in this world, and it is a system that is based upon the truth, it's based upon justice, and it's based upon integrity. Walt Thrower told you the truth and has no reason to lie to you. Shyndona Dickerson told you the truth. And she was told that if she lied she would face the maximum penalty on that charge and a perjury charge.
>
> ....
>
> Having heard the truth consistent with your oaths, we ask you to uphold the integrity of the system.

Mr. Broomfield asserts that while the prosecutor's reference to the truthfulness obligation of a witness in her plea agreement was permissible, "[t]he further argument that the detective and the informant were telling the truth was clearly impermissible." According to Mr. Broomfield, those statements "put the government's attorney behind the witness[es], vouching for their credibility," and, together with the prosecutor's further reference to the integrity of the system, "violated [his] substantial rights to a fair trial."

We typically give prosecutors considerable latitude where, as here, defense counsel arguably "invites" a response. *See Villa-Chaparro*, 115 F.3d at 803. Nevertheless, we want to take this opportunity to advise prosecutors against what

we perceive to be an increasing willingness to unnecessarily push the envelope of improper vouching. [1] As the district court properly noted, however, even assuming the government's argument in this case was improper, it does not warrant a new trial unless it influenced the jury's verdict. *See id.* Considering the trial as a whole, the extent of the alleged misconduct, and the role of the alleged misconduct, *see Gabaldon* , 91 F.3d at 94, we agree with the district court it did not.

In reading the record, it is clear the challenged statements were made in the context of rebutting defense counsel's full bore attack on Ms. Dickerson's credibility. Prior to making the challenged statements, the prosecutor told the jury they were entitled to disbelieve Ms. Dickerson, though he believed it would be inconsistent with all the evidence. Prior to deliberations, the court repeatedly

---

[1] We remind prosecutors,

> "[t]he United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.... He may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones."

*United States v. Gabaldon*, 91 F.3d 91, 94-95 (10th Cir. 1996) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

instructed the jurors that they were the sole and exclusive judges of the credibility of each of the witnesses called to testify. The court also instructed the jurors that the statements and arguments of counsel are not to be considered evidence in the case. Moreover, as the district court explained, Ms. Dickerson's testimony was used primarily to support the conspiracy charge of which Mr. Broomfield was acquitted. Ms. Dickerson was not present when Mr. Broomfield was arrested and consequently provided little valuable evidence to support the possession charge. Any improper argument about the truthfulness of Ms. Dickerson's testimony therefore had little or no effect on the outcome of the possession charge. Agent Thrower's testimony concerning the facts surrounding Mr. Broomfield's cocaine possession was never rebutted. Under these circumstances, we conclude the prosecutor's closing statements were not so egregious as to influence the jury to convict Mr. Broomfield on improper grounds.

For the foregoing reasons, the district court's order denying the motion to suppress and denying Mr. Broomfield a new trial are **AFFIRMED** .