MURPHY, Circuit Judge,
Dissenting
The majority is properly frustrated by the district court’s failure to make any findings of fact or even explain the legal basis for its decision to deny Ramstad’s suppression motion. See Majority Op. at 1265. It is indeed the district court’s responsibility to make findings of fact when necessary to resolve a motion to suppress evidence. See Fed.R.Crim.P. 12(e). When the district court abdicates that responsibility, this court’s task in reviewing the suppression ruling is made substantially more difficult, and sometimes impossible.
I nonetheless dissent from the Majority insofar as it states that factual findings are necessary to decide the legality of the initial traffic stop. Judicial efficiency suggests we decide those issues we can when such decisions will narrow the district court’s task on remand. See generally Park County Resource Council v. United States Dep’t of Agric., 817 F.2d 609, 617-18 (10th Cir.1987) (“[Rjemand is not necessary where there is no dispute regarding the underlying facts and where it is in the interest of judicial economy and efficiency to decide the matter.”), overruled on other grounds by Village of Los Ranchos De Albuquerque v. Marsh, 956 F.2d 970 (10th Cir.1992). The evidence pertinent to the threshold issue of the lawfulness of the stop is essentially undisputed. Considering that undisputed evidence and viewing any disputed evidence in a light most favorable to the government, this court should conclude the traffic stop violated the Fourth Amendment. Cf. United States v. Broomfield, 201 F.3d 1270, 1273 (10th Cir.2000) (noting that when the district court fails to make findings of fact, this court may affirm its ruling on a suppression motion if any reasonable view of the evidence supports that ruling).
In determining whether an investigatory vehicle stop is permissible under the Fourth Amendment, this court’s “sole inquiry is whether the particular officer had a reasonable suspicion that the particular motorist violated any ... of the multitude of applicable traffic and equipment regulations of the jurisdiction. ” United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir.1998) (quotation omitted) (emphasis added). For this court to conclude the detention of Ramstad’s vehicle was constitutionally sound, therefore, we must determine that before Trooper Smith executed the stop, he had a reasonable suspicion Ram-stad had violated a Kansas traffic or equipment regulation or statute.
At the suppression hearing, Trooper Smith testified that he stopped Ramstad’s vehicle because he noticed it carried a California license plate only on the rear and he believed California law required vehicles registered in that state to also *1267 display a license plate in the front. Trooper Smith further testified that statutory interstate compacts enacted in Kansas and which California had joined authorized him to enforce California’s license plate requirements. In other words, the government contends Ramstad’s failure to comply with California license plate requirements constitutes a violation of Kansas law. No reasonable reading of the interstate compacts or other statutes on which the government relies, however, supports that contention.
The first interstate compact on which the government relies to justify the traffic stop is the “Drivers License Compact,” Kan. Stat. Ann. § 8-1212. Contrary to the government’s interpretation of this statute, the Drivers License Compact merely obligates the State of Kansas to report violations of Kansas traffic laws and ordinances committed in Kansas by out-of-state motorists to those motorists’ home states. In no way does this compact render an out-of-state motorists’ non-compliance with the home state’s license plate requirements a violation of Kansas law.
The second interstate compact to which the government points is the “Nonresident Violator Compact,” id. § 8-1219.[1] Like the Drivers License Compact, the Nonresident Violator Compact has nothing to do with the authority of Kansas law enforcement officers to enforce license plate requirements of foreign states belonging to the compact. Instead, this compact merely prescribes procedures by which an out-of-state motorist cited for a traffic violation in Kansas can leave the state without having to post a bond.
Finally, the government contends that the Kansas license plate statute, id. § 8-142, requires out-of-state drivers traveling in Kansas to comply with the license plate requirements of their home states. Smith even cited this particular Kansas statute in his written warning to Ramstad. The government, however, fails to recognize that § 8-142 explicitly applies only to vehicles registered in Kansas. Section 8-142 provides that one cannot “operate ... upon a highway ... any vehicle ... which does not have attached thereto and displayed thereon the license plate or plates assigned thereto by the division.” Id. (emphasis added). For purposes of this section, “the division” is defined as “[t]he division of vehicles of the department of revenue.” Id. § 8-126(v). Additionally, “license plate” means “any plate, tag, token, marker or sign issued ... for the purpose of identifying vehicles registered under the provisions of the motor-vehicle registration laws of this state. ...” Id. § 8-126a (emphasis added). Ramstad, therefore, did not violate § 8-142 by driving in Kansas a vehicle registered in California that did not display two license plates.
In its attempt to justify the stop, the government has failed to point to any Kansas statute or regulation which Ramstad violated. Indeed, the Kansas statutes which do grant Trooper Smith authority to enforce the law expressly limit that authority to “enforcement of the traffic and other laws of this state relating to highways, vehiclesf,] and drivers of vehicles.” Id. § 74-2105(a) (emphasis added); see also id. § 74-2108 (vesting in highway patrol troopers the “power and authority of peace, police[,] and law enforcement officers”); id. § 74-5602(e) (defining police officer’s duties as “the prevention or detection of crime and the enforcement of the criminal or traffic laws of this state or any municipality thereof ” (emphasis added)).
The question remaining, therefore, is whether the vehicle stop was nonetheless constitutional because it was premised on Trooper Smith’s mistaken view of Kansas law such that he believed Ramstad had committed a Kansas traffic violation. Re *1268 cently,. the Fifth Circuit rejected the government’s argument that although a detained motorist had not actually violated any law, the evidence seized should be admissible under a good faith exception because the officer had a good faith but incorrect belief that a broken taillight on the detained vehicle constituted a violation of a Texas statute. See United States v. Lopez-Valdez, 178 F.3d 282, 287-89 (5th Cir.1999). The Lopez-Valdez court reasoned, “[I]f officers are allowed to stop vehicles based upon their subjective belief that traffic laws have been violated even where no such violation has, in fact, occurred, the potential for abuse of traffic infractions as pretext for effecting stops seems boundless and the costs to privacy rights excessive.” Id. at 289. Similarly, the Ninth Circuit recently held that an officer violated a motorist’s Fourth Amendment rights when he stopped the motorist in the absence of a traffic violation, even though the officer’s mistaken view of the law led him to believe a traffic infraction had occurred. See United States v. Lopez-Soto, 205 F.3d 1101, 1106 (9th Cir.2000).
This court has stated “that the Fourth Amendment does not invalidate warrant-less searches based on a reasonable mistake of fact, as distinguished from a reasonable mistake of law.” United States v. Salinas-Cano, 959 F.2d 861, 865 (10th Cir.1992) (quotation omitted) (emphasis added). It thus appears our precedent is in line with the position of the Fifth and Ninth Circuits that the failure to understand the law by the very person charged with enforcing the law is not objectively reasonable. That, is particularly true in this case when no reasonable person could read the statutes on which Trooper Smith and the government rely as authorizing a Kansas officer to enforce California license plate requirements. Because Trooper Smith lacked a reasonable suspicion that Ramstad had violated any Kansas traffic regulation or statute, the investigatory detention of Ramstad’s vehicle ran afoul of the Fourth Amendment.
Having reached that conclusion, I would remand for findings on the two remaining issues: (1) whether Ramstad’s consent to search was sufficiently attenuated from the illegal detention to render his consent voluntary in fact; and (2) whether the search ultimately conducted remained within the scope of Ramstad’s consent. To this end, the district court on remand should make findings not only regarding the voluntariness and scope of Ramstad’s consent, but also concerning the following factors which are relevant to the attenuation and thus voluntariness determination: whether Trooper Smith informed Ramstad that he was free to go or that he could refuse consent; the amount of time between the illegal detention and the consent; the presence and extent of intervening circumstances between the illegal stop and the consent; and the purpose and flagrancy of Trooper Smith’s misconduct. See generally Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); United States v. Gregory, 79 F.3d 973, 979 (10th Cir.1996).
In all other respects, I concur with the Majority’s remand.

. Ramstad asserts that Trooper Smith was mistaken in his belief that California is a member of the Nonresident Violator Compact. Even if Trooper Smith was so mistaken, this mistake is irrelevant to our analysis because whether or not California is a member of the Nonresident Violator Compact, this compact does not justify the stop of Ram-stad’s vehicle.