**PUBLISH**

**November 5, 2014**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JOSEPH TRAVIS FARMER,

      Defendant - Appellant.

No. 13-7054

---

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:12-CR-00086-RAW-1)**

---

Robert A. Ridenour, Assistant Federal Public Defender (Julia L. O'Connell, Federal Public Defender, and Barry L. Derryberry, Research & Writing Specialist, with him on the briefs), Tulsa, Oklahoma, for Defendant-Appellant Joseph Travis Farmer.

Linda A. Epperly, Assistant United States Attorney (Mark F. Green, United States Attorney, and Kyle E. Waters, Assistant United States Attorney, with her on the brief), Muskogee, Oklahoma, for Plaintiff-Appellee United States of America.

---

Before **MATHESON, EBEL,** and **McHUGH,** Circuit Judges.

---

**EBEL**, Circuit Judge.

---

In this direct criminal appeal, Defendant-Appellant Joseph Farmer challenges his conviction for being a felon found, in 2012, to be in unlawful possession of a firearm, arguing that the district court erred in admitting at trial evidence that Tulsa police had previously found Farmer unlawfully possessing another firearm in 2010. Farmer contends the district court should have suppressed evidence of his 2010 firearm possession, offered under Fed. R. Evid. 404(b), because Tulsa police obtained that evidence during an unlawful search. We conclude that any error in admitting this 404(b) evidence was harmless beyond a reasonable doubt. We also reject Farmer's challenges to the prosecutor's closing argument and his claim of cumulative error. Having jurisdiction under 28 U.S.C. § 1291, we therefore AFFIRM Farmer's conviction.

## I. BACKGROUND

"We recite the facts in the light most favorable to the jury's verdict." United States v. Berry, 717 F.3d 823, 827 (10th Cir.), cert. denied, 134 S. Ct. 495 (2013). In June 2012, Muskogee, Oklahoma Sheriff's Deputy Jeffrey Gragg stopped Farmer for speeding on Interstate 40. When the deputy first spoke with Farmer and his female passenger, the deputy smelled burnt marijuana. Farmer admitted to the deputy that he had smoked marijuana earlier that day and consented to the deputy searching his car. Doing so, Deputy Gragg found a loaded .357 revolver under the front edge of the driver's seat.

Based on these facts, a jury convicted Farmer of being a previously convicted felon unlawfully in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and the

district court sentenced Farmer to sixty months in prison to be followed by three years of

supervised release.  On appeal, Farmer challenges his conviction, asserting three grounds

for reversal.

## II.  DISCUSSION

### A.  Any error in admitting evidence that Tulsa police had previously found Farmer unlawfully in possession of another firearm in 2010 was harmless beyond a reasonable doubt

Farmer's defense at trial was that the gun found in his car in 2012 was not his and

that he was unaware that it was under the driver's seat.  To counter that defense, the

Government sought to present evidence to the jury from a Tulsa police officer, offered

pursuant to Fed. R. Evid. 404(b), that in 2010 the Tulsa officer, while searching Farmer's

motel room, had found him in unlawful possession of another firearm.  Farmer argued to

the district court that this Rule 404(b) evidence should be suppressed, reasserting that the

Tulsa officer had found that firearm during an unlawful search.  The district court denied

Farmer's motion to suppress without determining whether the 2010 search of Farmer's

Tulsa motel room was lawful, ruling instead that Farmer had waived any challenge to the

legality of that search when he pled guilty in state court to unlawfully possessing the gun

Tulsa police found during the search.[1]  We review the district court's decision de novo.

_____

[1]  The district court admitted evidence that Farmer was unlawfully in possession of the gun discovered during the 2010 search of his motel room under Rule 404(b), to show that Farmer knowingly possessed the firearm found under his car seat in 2012.  Farmer does not challenge the court's Rule 404(b) determination on appeal, but instead challenges the validity of the seizure of the gun from his motel room in 2010.

3

See United States v. Davis, 750 F.3d 1186, 1189 (10th Cir. 2014) (reviewing de novo question of law implicated by suppression motion).

The Fourth Amendment's exclusionary rule applies to preclude the Government's use of unlawfully obtained Rule 404(b) evidence 1) where the Government seeks to use that evidence "to prove an essential element of a charged offense," 2) "at least where there is some nexus between the initial search and seizure and the subsequent charged offense." United States v. Hill, 60 F.3d 672, 677 (10th Cir. 1995). The Government used the challenged 404(b) evidence here to prove an essential element of the offense charged in this case, that Farmer knowingly possessed the firearm found in his car in 2012. And the district court assumed that there was a sufficiently close 404(b) nexus between the present offense and the discovery of a gun in Farmer's Tulsa motel room in 2010.

Both the Government and Farmer, therefore, limit the issue now before the Court to the 2010 seizure of a gun in Farmer's possession. Farmer argues that the 2010 seizure was unlawful, so the evidence of that gun should have been suppressed in this current prosecution. The Government, in opposition, does not seek directly to establish the legality of the 2010 seizure, but rather argues only that Farmer cannot now challenge the lawfulness of the 2010 seizure because he admitted to possession of the seized gun when he pled guilty in state court to unlawfully possessing that weapon. The district court accepted the Government's argument, ruling that, even assuming that the exclusionary rule could apply here, Farmer waived his right to challenge the legality of the 2010

4

seizure when he pled guilty in state court to unlawfully possessing the firearm Tulsa police discovered in his motel room.  That was error.

The district court's decision that Farmer could no longer challenge the 2010 search of his Tulsa motel room was based on the argument that Farmer's state guilty plea waived all of his non-jurisdictional defenses, including any potential Fourth Amendment challenge to the seizure of the gun.  See United States v. DeVaughn, 694 F.3d 1141, 1153 (10th Cir. 2012) ("A guilty plea waives all defenses except those that go to the court's subject-matter jurisdiction and the narrow class of constitutional claims involving the right to not be haled into court."), cert. denied, 133 S. Ct. 2383 (2013).  That is certainly true for purposes of challenging his state weapons conviction.  See Haring v. Prosise, 462 U.S. 306, 319-21 (1983) (applying, e.g., Tollett v. Henderson, 411 U.S. 258, 267 (1973)).  But Farmer's guilty plea did not waive his right to challenge the validity of the search underlying his state conviction in other contexts.  See id. at 308, 319-22 (holding guilty plea in state criminal proceeding did not preclude criminal defendant from challenging legality of search underlying his state conviction in 42 U.S.C. § 1983 action).  By pleading guilty to the state offense, Farmer made a factual admission in that case that he committed the charged state offense, thereby waiving any Fourth Amendment claim that the state illegally seized his gun as evidence in that state prosecution.  Id. at 321-23.[2]

_____

[2] In Haring, the Supreme Court held that a guilty plea in state criminal proceedings did not preclude the criminal defendant from later challenging the legality of the search underlying his state conviction in a subsequent 42 U.S.C. § 1983 action.  462 U.S. at 308, 319-22.  In reaching that decision, the Court rejected a waiver argument similar to the

For these reasons, then, Farmer did not waive his Fourth Amendment challenge to the 2010 search of his Tulsa motel room by pleading guilty to the state weapons offense. See id. at 319-20. The district court, therefore, erred in refusing to consider whether that 2010 search was lawful before admitting Rule 404(b) evidence of the gun discovered in Farmer's motel room during that search. See Hill, 60 F.3d at 677, 680-81. Nonetheless, this error was harmless beyond a reasonable doubt because omitting this Rule 404(b) evidence "would not have changed the jury's determination."[3] See id. at 681.

In order to convict Farmer, the jury had to find that he knowingly possessed the firearm found under his car seat in 2012. Knowing possession could be either actual or

one the Government makes here. See id. at 320-22. In addition, Haring rejected the argument that state collateral estoppel principles precluded the state criminal defendant from challenging the search, and the argument that, by pleading guilty, the criminal defendant implicitly admitted that the search was lawful. See id. at 312-18. Because the Government has not asserted such arguments in this case, we have no occasion to address those issues here. Furthermore, the Government's Rule 404(b) evidence consisted of only the testimony of the Tulsa police officer that he found a gun in Farmer's motel room in 2010. The Government did not attempt to introduce into evidence the fact of Farmer's resulting state weapons conviction, nor did the Government attempt to rely in this case on any factual admission that Farmer may have made, in pleading guilty to the state weapons offense, that he unlawfully possessed the firearm in 2010. So we have no occasion here to address whether the Government could have properly done so.

[3] It is the Government's burden to establish that constitutional error is harmless beyond a reasonable doubt. See United States v. Mullikin, 758 F.3d 1209, 1211 (10th Cir. 2014). The Government raised the harmless error argument here only in a perfunctory fashion. We, nevertheless, consider the harmless error justification because the record in this case is neither long nor complex, and our conclusion that the error was harmless beyond a reasonable doubt is straightforward and clear. See United States v. Holly, 488 F.3d 1298, 1307-08 (10th Cir. 2007); see also United States v. Spence, 721 F.3d 1224, 1230 & n.6 (10th Cir.) (in dicta), cert. denied, 134 S. Ct. 660 (2013).

6

constructive, meaning that Farmer had either "direct physical control over" the gun "at a given time" (actual possession), or that he had "both the power and the intention at a given time to exercise dominion or control over" it, "either directly or through another person or persons" (constructive possession). (R. v.1 at 129.) Further, such possession could be joint. See United States v. Bagby, 696 F.3d 1074, 1081 n.5 (10th Cir. 2012) (noting similar instruction "accurately stated the law").

The Government presented strong evidence, apart from the challenged Rule 404(b) evidence, that Farmer knowingly possessed the firearm found under his car seat in 2012. See Hill, 60 F.3d at 680-81. That evidence included proof of the following: Although just recently purchased, Farmer had the car for several weeks and, during that time, he spent a considerable amount of time in the car, driving cross-country from Oklahoma to Atlanta and back again. And Farmer was driving his car at the time the weapon was found, "sitting right there," unobstructed, "underneath the driver's seat, right on the edge of the seat" and easily within Farmer's reach. (R. v.2 at 109, 116.) Moreover, at the time the deputy searched the car, Farmer was sitting in the deputy's patrol car. The jury could have inferred that Farmer knew that there was a gun underneath the driver's seat of his car because, when the deputy began searching the driver's side of that vehicle, Farmer tried to distract the deputy by honking the horn of the patrol car and, once he got the deputy's attention, telling him falsely that there might be marijuana or a pipe in the car's trunk. Jurors could also have inferred that Farmer knew about the gun because video they saw of Farmer, taken by a camera in the patrol car,

7

showed that, as the deputy searched the driver's side of the car, before he found the gun, Farmer muttered the sentiment that he hoped the passenger would "take the gun"; Farmer expressed no surprise when the deputy discovered the weapon underneath the driver's seat of Farmer's car; and as the deputy continued searching the vehicle, Farmer attempted to get the passenger's attention to tell her to "take the gun" and to assure her that if she did, she would not go to jail. Farmer asked the passenger again to take responsibility for the gun after deputies took the pair to jail.

This evidence strongly indicated that Farmer knowingly possessed the firearm under his car seat, apart from the challenged Rule 404(b) evidence that he previously unlawfully possessed another gun in 2010. Moreover, although the prosecutor once commented on this 404(b) evidence during closing argument, he did so only briefly.

Based on the strength of the evidence without the challenged 404(b) evidence, and in light of the limited use the prosecutor made of the 404(b) evidence during closing argument, "we find beyond a reasonable doubt that omitting evidence of" Farmer's prior unlawful gun possession in 2010 "would not have changed the jury's determination" that Farmer knowingly possessed the firearm found underneath the driver's seat of his car in 2012. Hill, 60 F.3d at 681. Therefore, any error in admitting evidence of Farmer's prior gun possession in 2010 was harmless beyond a reasonable doubt. See id.

## B. The prosecutor's closing argument does not warrant reversal

Farmer next argues that the prosecutor's improper arguments deprived Farmer of a fair trial. We disagree.

8

**1. The prosecutor's argument did not amount to improper vouching that warrants reversal**

In response to the defense's suggestion, during trial, that Deputy Gragg planted the gun in Farmer's car, the prosecutor, on several occasions during his initial closing argument, asked jurors to consider why Deputy Gragg might do that: "What has Deputy Gragg got to gain by planting a firearm on a guy he just met five minutes ago? You think this is his career case?"; and "[d]o you think he has anything to gain by placing his career, his freedom in jeopardy . . . to pin a gun on a guy that is just rolling down the highway? It just doesn't make sense." (R. v.2 at 204-05.) Similarly, in his rebuttal closing, the prosecutor argued that Deputy Gragg "didn't have anything to gain by pinning a gun on this guy." (Id. at 221.)

Defense counsel objected to each of these statements, but the trial court overruled those objections. We, therefore, review these arguments de novo. See United States v. Anaya, 727 F.3d 1043, 1052 (10th Cir. 2013), cert. denied, ---S.Ct.---, 2014 WL 5311407 (U.S.). Because the prosecutor was responding to the defense's contention that Deputy Gragg planted the gun in Farmer's car, these remarks were not improper. See United States v. Robinson, 59 F.3d 1318, 1323 (D.C. Cir. 1995); United States v. Cotton, 631 F.2d 63, 65-66 (5th Cir. 1980); see also United States v. Franklin-El, 555 F.3d 1115, 1126 (10th Cir. 2009) ("Prosecutors have considerable latitude to respond to an argument made by opposing counsel.") (internal quotation marks omitted).

But even if the prosecutor's argument could be deemed improper vouching, these

9

remarks were, in any event, harmless beyond a reasonable doubt. See Anaya, 727 F.3d 1043, 1052. As previously explained, there was strong evidence establishing that Farmer was a previously convicted felon who knowingly possessed the firearm found under the driver's seat of his car. See United States v. Sierra-Ledesma, 645 F.3d 1213, 1227 (10th Cir. 2011); United States v. Rogers, 556 F.3d 1130, 1143 (10th Cir. 2009). And, again, if there was any improper vouching for Deputy Gragg, it was in response to defense counsel's contention that the deputy put the gun in Farmer's car. See United States v. Broomfield, 201 F.3d 1270, 1276-77 (10th Cir. 2000) (concluding improper vouching in response to defense argument was harmless, when considered in context of trial as a whole). In addition, the district court ameliorated any improper vouching here by instructing jurors that they were the sole judges of the witnesses' credibility and that the attorneys' arguments were not evidence. See United States v. Irvin, 682 F.3d 1254, 1275 (10th Cir. 2012); Broomfield, 201 F.3d at 1277. Under these circumstances, then, even if the Government's argument amounted to improper vouching, it was harmless beyond a reasonable doubt.[4]

Next, Farmer contends that the prosecutor improperly vouched for the deputy's

---

[4] See United States v. Johnson-Dix, 54 F.3d 1295, 1304-05 (7th Cir.) (holding prosecutor's improper vouching for government agent, by arguing that agent would not risk his career to testify falsely "to get this one defendant," did not result in unfair trial); United States v. Martinez, 981 F.2d 867, 871 (6th Cir.) (holding that prosecutor's improper vouching, asking jurors why detective would risk eighteen-year career to testify falsely, where there was no evidence before jury that detective would have risked his career he had lied, was not reversible error).

10

credibility by arguing that defense counsel "says it is only Deputy Gragg's word. Well, where I come from a person's word is what he lives by and he gave you his word. Now you have to judge whether that word is good enough." (R. v.2 at 222.) This time the district court sustained defense counsel's objection to that argument and then admonished the jury that "you cannot consider counsel's statement that - - I don't remember what it was exactly, but where he was bolstering the credibility of the witness." (Id.) Defense counsel did not object to the form of this admonishment. We, therefore, consider "whether the district court's failure sua sponte to grant a mistrial or issue some further curative instructions was plain error." Anaya, 727 F.3d at 1052 (internal quotation marks omitted). The district court did not plainly err here. Although the court's immediate curative instruction may have been confusing to jurors, it was sufficient in light of the earlier instructions the court gave jurors that they were "the sole judges" of the witnesses' credibility and that "[t]he lawyers' statements and arguments are not evidence." (R. v.1 at 118, 121.) See Irvin, 682 F.3d at 1275; Broomfield, 201 F.3d at 1277.

> **2. It was not improper for the prosecutor to argue that the defense strategy was: if you do not have either the law of the facts on your side, argue that the police are at fault**

During the trial, defense counsel pointed out that the Government had failed to test the gun for fingerprints and suggested that perhaps Deputy Gragg planted the gun in Farmer's car. In response, the prosecutor, during his initial closing argument, stated: "I've always heard . . . if you don't have the facts in favor of you, argue the law. If you don't have the law in favor of you, argue the facts. If you don't have either one of them

11

in favor of you, say the cop did it." (R. v.2 at 204.) The prosecutor made a similar argument during his rebuttal closing.

Farmer challenges these two comments, conceding that, because he did not timely object to them, this court's review is for plain error. See Anaya, 727 F.3d at 1053. "Under plain error review, reversal is warranted only when: (1) the prosecutor's statement is plainly improper and (2) the defendant demonstrates that the improper statement affected his or her substantial rights." Id. (internal quotation marks omitted).

The remarks at issue here were not plainly improper. They were, instead, fair comment on the evidence. Cf. United States v. Santiago, 977 F.2d 517, 520 (10th Cir. 1992) (holding similar argument, made in response to entrapment defense, was not plain error). And they were a permissible response to defense counsel's argument. See Franklin-El, 555 F.3d at 1126.

Even if improper (which they were not), these remarks did not affect Farmer's substantial rights; that is, there is not a reasonable probability that, absent these remarks, the jury's verdict would have been different. See United States v. Fleming, 667 F.3d 1098, 1104, 1106 (10th Cir. 2011); Rogers, 556 F.3d at 1141.

### 3. The prosecutor's argument, that Farmer had as much right as the Government to test the gun for fingerprints, did not warrant a mistrial

Defense counsel, in his closing, argued extensively that the Government failed to test the gun found in Farmer's car for fingerprints. In response, the prosecutor stated: "Fingerprints. The defendant has as much right to research that evidence as - - as much

12

right to it as the government does." (R. v.2 at 223.) Defense counsel objected that this remark improperly shifted the burden of proof to the defense; the trial court sustained that objection but denied defense counsel's motion for a mistrial.

Farmer argues that the district court should have granted a mistrial because the prosecutor's misconduct was too egregious to be cured by the court's instructions. Although the district court sustained the defense's objection to this argument, it is not clear that the prosecutor's argument was improper. See United States v. Musser, 856 F.2d 1484, 1485-86 (11th Cir. 1988) (holding similar argument was "a fair response" to defense counsel's argument that Government had failed to fingerprint bag containing cocaine). Even assuming the remark was improper, the district court did not abuse its discretion in denying a mistrial. See United States v. Serrato, 742 F.3d 461, 464 (10th Cir.), cert. denied, 134 S. Ct. 2739 (2014). After sustaining the defense's objection, the trial court admonished jurors to remember the court's instructions to them "as to the burden. The defendant does not have to prove his innocence." (R. v.2 at 224.) Farmer did not object to the form of this admonishment. And, prior to closing arguments, the trial court had instructed jurors that Farmer was presumed innocent, that the government had the burden of proving him guilty beyond a reasonable doubt, and that Farmer was "not required to prove his innocence or to produce any evidence at all." (R. v.1 at 116.) In light of these curative measures, the district court did not abuse its discretion in refusing to declare a mistrial. Cf. Serrato, 742 F.3d at 465-66 (holding any error in not sustaining objection to prosecutor's comment that defense attorneys had same

13

opportunity as Government to ask Government witness any questions they wanted was harmless in light of trial court's reminding jury that defense had no obligation to cross-examine Government witness).[5]

## C. There was no cumulative error warranting reversal

Lastly, Farmer argues that the cumulative effect of the trial's errors warrants reversing his conviction. Where, as here, there was constitutional error, the government bears the burden of proving that those errors, in the aggregate, were harmless beyond a reasonable doubt. See United States v. Battles, 745 F.3d 436, 462 (10th Cir. 2014), cert. denied, 2014 WL 1695149 (Oct. 14, 2014) (No. 13-1309). Considering the cumulative effect of those errors on Farmer's trial, we conclude beyond a reasonable doubt that they did not impact the jury's verdict. Although Farmer may not have received a perfect trial, we are convinced he received a fair one. See United States v. Sarracino, 340 F.3d 1148, 1169 (10th Cir. 2003).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Farmer's conviction.

---

[5] We further reject Farmer's contention that the cumulative effect of the prosecutor's alleged improper closing arguments deprived Farmer of a fair trial. The arguments that Farmer challenges either were not improper or the district court adequately cured them.