*United States v. Jones*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2021

(Argued: September 17, 2021       Decided: August 1, 2022)

No. 20-3009

———————————————————

UNITED STATES OF AMERICA,

*Appellee,*

-v.-

DAVID ROY JONES,

*Defendant-Appellant.*

———————————————————

Before:     LIVINGSTON, *Chief Judge*, CHIN and NARDINI, *Circuit Judges.*

Defendant-Appellant David Roy Jones was indicted for knowingly producing child pornography in violation of federal law. He moved to suppress evidence gathered from his electronic devices, arguing that the government's search warrants lacked probable cause and therefore violated his Fourth Amendment rights. The United States District Court for the Western District of New York (Feldman, *M.J.* & Larimer, *J.*) denied the motion. Jones then pleaded guilty but reserved the right to appeal the district court's decision on his motion to suppress.

1

We disagree with the district court that Jones's prior guilty plea to an earlier charge in Tennessee state court precludes him from challenging the search warrants in this case. But we agree that, even assuming *arguendo* that the warrants are defective, the good-faith exception to the exclusionary rule applies. We therefore AFFIRM the judgment of the district court.

FOR APPELLEE:                                    TIFFANY H. LEE, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, NY.

FOR DEFENDANT-APPELLANT:           JAY OVSIOVITCH, Assistant Federal Public Defender, Federal Public Defender's Office, Western District of New York, Rochester, NY.

DEBRA ANN LIVINGSTON, *Chief Judge*:

Defendant-Appellant David Roy Jones ("Jones") appeals from an August 31, 2020 judgment of the United States District Court for the Western District of New York (Larimer, *J.*), convicting him of the knowing production of child pornography and sentencing him to a term of imprisonment of 240 months and a 10-year term of supervised release. Jones pleaded guilty pursuant to a plea agreement but reserved the right to appeal the district court's denial of his suppression motion. On appeal, Jones challenges the district court's determinations that (1) his earlier guilty plea in Tennessee state court precludes him from challenging the validity of search warrants issued in Tennessee; and (2) even assuming the warrants are defective, the good-faith exception to the exclusionary rule applies.

As explained below, we conclude that the district court erred by precluding Jones from challenging the Tennessee warrants and the use of any evidence derived from those warrants. At the same time, we agree with the district court that even assuming *arguendo* that the warrants are defective, the exclusionary rule does not apply here. We therefore affirm the district court's judgment.

3

## BACKGROUND

### I. Factual Background[1]

### A. The Tennessee Investigation

The Hamblen County, Tennessee Sheriff's Office (the "Sheriff's Office") began investigating Jones in 2016 when it received information that he had taken pornographic photographs of two minors—one 17 years old ("State Victim 1") and the other 15 years old ("State Victim 2"). State Victim 1's mother ("Complainant") alleged that Jones gave the victims alcohol and drugs, took nude pictures of them, and made sexual advances toward them. She also attested that she had seen a text message from Jones in which he requested nude photographs from her daughter.

That same day, the Sheriff's Office received signed statements from each victim describing Jones's behavior. State Victim 1 alleged that Jones gave her and State Victim 2 drugs and alcohol and took nude pictures of them. She also alleged that Jones kept nude pictures of her on his phone. And she alleged that Jones often made sexual remarks, including repeatedly asking to perform oral sex on State Victim 2.

---

[1] The facts are not in dispute and are derived from evidence the parties presented regarding Jones's motion to suppress, the magistrate judge's report and recommendation addressing Jones's motion to suppress, and the district court's subsequent decision and order denying Jones's motion to suppress.

State Victim 2 made similar allegations. She alleged that Jones plied her and State Victim 1 with drugs and alcohol. She also alleged that Jones asked them to pose nude for him on a bed so he could take photographs of them. And she added that Jones often made sexual remarks directed at her, echoing State Victim 1's allegation that Jones asked repeatedly to perform oral sex on her.

Based on these allegations, Detective Sergeant Jim Brooks ("Detective Brooks") sought and obtained six separate warrants ("Tennessee Warrants"). These warrants authorized the Sheriff's Office to seize and search Jones's property for evidence that he sexually exploited a minor in violation of Tennessee law. *See* Tenn. Code Ann. § 39-17-1003.

Detective Brooks first sought a warrant to seize Jones's cellular devices. In an affidavit submitted in support of his application for the first warrant, Detective Brooks attested:

> [The] listed cellular device[] or devices in the possession of David Ray [sic] Jones at [Jones's address] were used to take pictures of minor children. On June 28, 2016[,] [K.B.], the mother of 17 year old minor child [State Victim 1] reported that on or about January 1, 2016 to June 28, 2016[,] David Ray Jones . . . did make sexual advances towards her daughter. [K.B.] also stated that David Ray Jones . . . got her daughter and her friend [State Victim 2], 15 years old, drunk and high[,] took nude pictures of them, and made sexual advances towards [them].

5

ECF No. 25-1 at 7.[2] Based on his knowledge, training, and experience, Detective Brooks attested that he believed that the devices would "contain evidence of pictures of minor children in different stages of undress." *Id.* at 8. After Tennessee Criminal Court Judge John Dugger ("Judge Dugger") granted the application, Detective Brooks executed the warrant.

Detective Brooks applied for two more warrants to search Jones's home and vehicles for electronic devices the next day. Detective Brooks submitted similar affidavits in support of the applications for these warrants. Judge Dugger granted the applications, and the Sheriff's Office executed both warrants. Detective Brooks recovered photographs and other electronic devices from Jones's residence.

Detective Brooks later obtained three more warrants that authorized him to search the electronic devices the Sheriff's Office had seized. The final application explained that Detective Brooks had "learned of the existence of a third victim"—Jones's "ex stepdaughter from New York"—and that there was "reason to believe that photos of [her were] stored on the laptop computer, hard drive, and memory cards" the Sheriff's Office had recovered. *Id.* at 29.

---

[2] Citations to "ECF" are to the district court's docket, No. 18-cr-6061 (DGL) (JWF).

Jones pleaded guilty to two counts of Sexual Exploitation of a Minor in Hamblen County Criminal Court in July 2017. Tennessee first charged Jones with possessing more than 50 pornographic images, a Class C felony under Tennessee law that is punishable by three to fifteen years' imprisonment. *See* Tenn. Code Ann. § 39-17-1003(a), (b); *id.* § 40-35-111. But Jones pleaded guilty to possessing fewer than 50 images, a Class D felony punishable by only two to twelve years' imprisonment. *See id.* § 39-17-1003(d); *id.* § 40-35-111. Judge Dugger sentenced Jones to serve two years in prison.

## B. The Federal Investigation

Federal law enforcement started investigating Jones in 2017 when a different victim ("Federal Victim 1"), who resided in the Western District of New York, contacted the Federal Bureau of Investigation ("FBI"). Federal Victim 1 alleged that Jones had taken nude pictures of her when she was between 13 and 16 years old. An FBI agent contacted Detective Brooks, who provided two pornographic photographs obtained from Jones's residence through the state investigation. Federal Victim 1 confirmed that the photographs depicted her and alleged that Jones took them when she was about 14 years old.

The FBI obtained two search warrants (the "Federal Warrants"), authorizing it to search electronic devices previously collected by the Sheriff's Office. The Sheriff's Office sent the FBI digital copies of three storage cards seized from Jones's residence. Those storage cards contained pornographic pictures and videos of two minors. Federal Victim 1 confirmed that these pictures and videos depicted her and a minor male ("Federal Victim 2"). She claimed that she and Federal Victim 2 took the pictures at Jones's direction and that Jones took the videos.

## II. Procedural History

A federal grand jury indicted Jones on two counts of Production of Child Pornography in 2018. *See* 18 U.S.C. § 2251(a). The government later filed a notice of its intent to use evidence seized under the Tennessee and Federal Warrants. *See* Fed. R. Crim. P. 12(b)(4). Jones moved to suppress. He argued that the Tennessee Warrants violated the Fourth Amendment's particularity and probable cause requirements and that the evidence seized under the Federal Warrants was fruit of the poisonous tree.

In a report and recommendation, Magistrate Judge Jonathan Feldman recommended that the district court deny Jones's motion. *United States v. Jones* (*R&R*), 2019 U.S. Dist. LEXIS 101810 (W.D.N.Y. Apr. 11, 2019). Relying largely on this

8

Court's decision in *United States v. Gregg*, 463 F.3d 160 (2d Cir. 2006) (per curiam), Judge Feldman reasoned that Jones's guilty plea in Tennessee state court "collaterally estopped" him from challenging the constitutional validity of the Tennessee Warrants. *Id.* at *5–11. The district court adopted Judge Feldman's recommendation. *United States v. Jones*, 2019 U.S. Dist. LEXIS 101507 (W.D.N.Y. June 18, 2019). It agreed that "the principle of collateral estoppel" precluded Jones from challenging the validity of the Tennessee Warrants. *Id.* at *5–7. In the alternative, the district court held that suppression was unwarranted because the good-faith exception to the exclusionary rule applies. *Id.* at *7–8. Jones pleaded guilty to Count Two of the indictment pursuant to a plea agreement but reserved the right to appeal the denial of his motion to suppress.

## DISCUSSION

Jones argues that the district court erred in concluding that (1) his prior guilty plea in Tennessee state court collaterally estops him from challenging the Tennessee Warrants and (2) the good-faith exception to the exclusionary rule precludes suppression. We agree with Jones that the district court erred in precluding Jones from challenging the Tennessee Warrants but disagree that exclusion is required here.

9

## I.

## A.

We begin with collateral estoppel. "Issue preclusion, also referred to as collateral estoppel,[3] bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to a prior judgment.'" *Cayuga Nation v. Tanner*, 6 F.4th 361, 374 (2d Cir. 2021) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)); *see also* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4416 (3d ed. Apr. 2022 update); Restatement (Second) of Judgments § 27 (Am. L. Inst. 1982) ("Restatement").[4]

"Although . . . developed in civil litigation," the doctrine of issue preclusion has been "extended" into the criminal sphere. *Yeager*, 557 U.S. at 119 n.4. More than a century ago, the Supreme Court "recognized in federal criminal prosecutions a claim of what was called res judicata, but which today would be described as collateral estoppel" or issue preclusion. *United States ex rel. DiGiangiemo v.*

---

[3] The Supreme Court "has observed" that "'issue preclusion' is the more descriptive term." *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 356 n.1 (2016) (quoting *Yeager v. United States*, 557 U.S. 110, 120 n.4 (2009)).

[4] Unless otherwise indicated, we omit all internal citations, quotation marks, alterations, emphases, and footnotes from citations.

*Regan*, 528 F.2d 1262, 1264 (2d Cir. 1975) (Friendly, *J.*) (citing *United States v. Oppenheimer*, 242 U.S. 85 (1916) (Holmes, *J.*)); *see also Currier v. Virginia*, 138 S. Ct. 2144, 2159 (2018) (Ginsburg, *J.*, dissenting). And in *Ashe v. Swenson*, 397 U.S. 436 (1970), the Supreme Court "link[ed] the issue-preclusion inquiry to the Double Jeopardy Clause" of the Fifth Amendment. *Bravo-Fernandez*, 137 S. Ct. at 358 & n.2. Since *Ashe*, we have recognized that there is an "'issue preclusion' component" of the Double Jeopardy Clause, which "precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *United States v. Hicks*, 5 F.4th 270, 275 (2d Cir. 2021) (quoting *Yeager*, 557 U.S. at 119).

Although the Supreme Court "has not addressed directly the question of whether collateral estoppel can be applied against the defendant in a criminal case," *United States v. Gallardo-Mendez*, 150 F.3d 1240, 1242 (10th Cir. 1998); *see also Currier*, 138 S. Ct. at 2155 (plurality opinion), most courts have held that the Constitution does not permit the government to preclude a defendant from contesting an element of a criminal offense, *see Gallardo-Mendez*, 150 F.3d at 1246; *United States v. Smith Baltiher*, 424 F.3d 913, 920–23 (9th Cir. 2005); *United States v. Pelullo*, 14 F.3d 881, 889–97 (3d Cir. 1994); *United States v. Harnage*, 976 F.2d 633, 634–36 (11th Cir.

11

1992); *State v. Hewins*, 760 S.E.2d 814, 822–23 (S.C. 2014) (collecting state court decisions holding the same).[5]

We agree with this consensus because the Fifth Amendment's due process guarantee and the Sixth Amendment's jury trial guarantee "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin*, 515 U.S. 506, 510 (1995); *see also Sandstrom v. Montana*, 442 U.S. 510, 523 (1979) (noting "the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime"). Precluding a criminal defendant from relitigating an element of a criminal offense—in effect, issuing a partial directed verdict in the government's favor on that element—would impermissibly "invade the factfinding function which in a criminal case the law assigns solely to the jury." *Sandstrom*, 442 U.S. at 523; *see also United States v. Singleton*, 532 F.2d 199, 206 (2d Cir. 1976) (noting that a partial

---

[5] In at least two Ninth Circuit cases, the federal government agreed. *See Smith Baltiher*, 424 F.3d at 920 ("[T]he government abandoned its defense of the use of offensive collateral estoppel against criminal defendants, informing us that 'in federal criminal trials, the United States may not use collateral estoppel to establish, as a matter of law, an element of an offense or to conclusively rebut an affirmative defense on which the Government bears the burden of proof beyond a reasonable doubt.'" (quoting *United States v. Arnett*, 353 F.3d 765, 766 (9th Cir. 2003) (en banc))).

directed verdict in the government's favor in a criminal case would be an "unjustifiable encroachment upon the jury's sole duty, *i.e.*, to decide all issues of fact").[6]

The "constitutional concerns" that would arise from precluding a criminal defendant from contesting an element of an offense, however, do not apply to suppression motions. *United States v. Shaw*, 2017 U.S. Dist. LEXIS 58433, at *12 (S.D.N.Y. Apr. 13, 2017) (Sullivan, *J.*). Such motions are "adjudicated by judges," not juries, "and determined based on the preponderance of the evidence for the limited purpose of admitting or excluding evidence at trial." *Id.* (citing *United States v. Matlock*, 415 U.S. 164, 173–74 (1974)). And "[a]lthough the doctrine of collateral estoppel as to the facts determined at the trial of criminal cases does not run both ways" because it applies only against the government, "this does not bar application of a collateral estoppel rule [to suppression motions]." 6 Wayne R. LaFave, *Search and Seizure* § 11.2(g) (6th ed. Dec. 2021 update).

We have previously suggested in dicta that a defendant may be precluded from relitigating a motion to suppress. *See Laaman v. United States*, 973 F.2d 107,

---

[6] This conclusion casts no doubt on our prior holding that "a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent *civil* proceeding as to those matters determined by the judgment in the criminal case." *Maietta v. Artuz*, 84 F.3d 100, 102 n.1 (2d Cir. 1996) (emphasis added).

113 (2d Cir. 1992) (noting that "a prior decision by another court on a motion to suppress is not ordinarily reconsidered in the absence of substantial new evidence or extraordinary circumstances" and collecting authorities). Most courts have agreed. *See, e.g.*, *United States v. McManaman*, 673 F.3d 841, 847 (8th Cir. 2012); *Shaw*, 2017 U.S. Dist. LEXIS 58433, at *12–14 (collecting cases); *United States v. Walker*, 239 F. Supp. 3d 738, 740 (S.D.N.Y. 2017); *Hewins*, 760 S.E. at 823; *see also* Anne Bowen Poulin, *Prosecution Use of Estoppel and Related Doctrines in Criminal Cases: Promoting Consistency, Tolerating Inconsistency*, 64 Rutgers L. Rev. 409, 432–33 & nn.98–99 (2012) (collecting cases).

Supreme Court teaching in a related context supports—and may even require—the same conclusion. The Court has held that when a court denies a motion to suppress, the defendant may be precluded from relitigating the Fourth Amendment issue in a subsequent civil action under 42 U.S.C. § 1983. *Allen v. McCurry*, 449 U.S. 90, 103–05 (1980); *see also Owens v. Treder*, 873 F.2d 604, 607 (2d Cir. 1989) ("Principles of collateral estoppel may bar relitigation in a subsequent civil rights action in federal court of an issue that was determined in a state court criminal proceeding."). *Allen* rejected the "principle that every person asserting a federal right is entitled to one unencumbered opportunity to litigate that right in a federal

14

district court, regardless of the legal posture in which the federal claim arises," and the argument that constitutional rules may rest on "a general distrust of the capacity of the state courts to render correct decisions on constitutional issues." 449 U.S. at 103, 105. Though *Allen* arose in the civil context, we see no persuasive reason to distinguish between the preclusive effect of a previously litigated Fourth Amendment claim in a subsequent § 1983 action and in a subsequent prosecution. We therefore conclude that precluding a criminal defendant from relitigating a suppression motion—so long as the defendant had a full and fair opportunity to litigate the issue once—is not per se unconstitutional.[7]

## B.

Next, we consider whether, under Tennessee law, Jones's guilty plea precludes him from challenging the Tennessee Warrants. Like any other state court

---

[7] We note that, with only narrow exceptions, nonparties are not subject to issue preclusion. Restatement § 27; *see also Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008) ("The application of claim and issue preclusion to nonparties . . . runs up against the deep-rooted historic tradition that everyone should have his own day in court."). For that reason, we do not disturb the longstanding "rule in this Circuit that collateral estoppel never bars the United States from using evidence previously suppressed in a state proceeding in which the United States was not a party." *United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997); *see also United States v. Peterson,* 100 F.3d 7, 12 (2d Cir. 1996) (noting that "criminal collateral estoppel . . . generally may not be invoked against one sovereign on the basis of a ruling in a prosecution brought by a different sovereign"); *United States v. Davis*, 906 F.2d 829, 835 (2d Cir. 1990) (similar); 6 LaFave, *supra*, § 11.2(g) (similar).

judgment, "the preclusive effect of a guilty plea entered in state court upon subsequent federal proceedings is determined on the basis of collateral estoppel and the full faith and credit statute." *Gregg*, 463 F.3d at 165; *see also Watley v. Dep't of Child. & Families*, 991 F.3d 418, 425 (2d Cir. 2021). We must therefore determine whether Tennessee courts would apply issue preclusion against Jones in the circumstances presented here. We conclude they would not because the government has produced no evidence (and does not argue) that the suppression issue was actually litigated or decided in the prior state case.

To begin, in *State v. Flake*, the Tennessee Supreme Court suggested that, when the requirements for issue preclusion under Tennessee law are satisfied, criminal defendants can be collaterally estopped from relitigating suppression motions. 114 S.W.3d 487, 507 (Tenn. 2003). *Flake* noted that "collateral estoppel *likely* could be applied" to give preclusive effect to a prior suppression decision but proceeded to consider the merits of the defendant's arguments as a matter of discretion. *Id.* (emphasis added); *see also State v. Mendenhall*, 2020 Tenn. Crim. App. LEXIS 343, at *76 (Crim. App. May 14, 2020). Relying on *Flake*, an intermediate appellate court in Tennessee precluded a defendant from relitigating a motion to suppress. *See Mendenhall*, 2020 Tenn. Crim. App. LEXIS 343, at *73–79 (noting that

16

suppression motions "are pretrial matters for the judge's determination and do not involve the jury or usurp [its] role as fact-finder"). But it appears that the Tennessee Supreme Court has never squarely so held. *See State v. Scarbrough*, 181 S.W.3d 650, 655 n.3 (Tenn. 2005) (observing that *Flake*'s discussion of the issue was dicta); *Mendenhall*, 2020 Tenn. Crim. App. LEXIS 343, at *76.

To the extent that this issue is unsettled under Tennessee law, we must "carefully predict[] how the state's highest court" would decide the issue. *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 142 (2d Cir. 2021). "Our predictive inquiry is guided by decisions of the state's lower courts, decisions on the same issue in other jurisdictions, and other sources the state's highest court might rely upon in deciding the question." *Id.* We think it likely that the Tennessee Supreme Court would permit the government to preclude criminal defendants from relitigating suppression motions based on the Tennessee Supreme Court's dictum in *Flake*, the well-reasoned decision in *Mendenhall*, and the weight of authority in other jurisdictions.

We need not resolve this issue, however. Even assuming *arguendo* that Tennessee courts would apply issue preclusion to suppression motions in some cases, the government has failed to meet its burden to show that the doctrine applies

17

here.  Under Tennessee law, collateral estoppel "bars the same parties or their privies from relitigating in a later proceeding legal or factual issues that were *actually raised and necessarily determined in an earlier proceeding*."  *Mullins v. State*, 294 S.W.3d 529, 534 (Tenn. 2009) (emphasis added); *accord Mendenhall*, 2020 Tenn. Crim. App. LEXIS 343, at *74.  In Tennessee,

> [t]he party invoking collateral estoppel has the burden of proof.  To prevail with a collateral estoppel claim, the party asserting it must demonstrate (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.
>
> Moreover, in order for the doctrine of collateral estoppel to apply, the issue must not only have been actually litigated and decided, it must also have been necessary to the judgment.  Determinations of an issue or issues that are not necessary to a judgment have the characteristics of dicta and will not be given preclusive effect.

*Mullins*, 294 S.W.3d at 535; *see also Bowen v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016); *Mendenhall*, 2020 Tenn. Crim. App. LEXIS 343, at *74.

18

Applying Tennessee's test for issue preclusion, we conclude that the government has not established a basis for precluding Jones from challenging the Tennessee Warrants. The government has not shown that a Fourth Amendment issue in the present case "is identical to an issue decided in [the] earlier [state criminal] proceeding," nor even that any such issue "was actually raised," much less "litigated, and decided on the merits in the earlier proceeding." *Bowen*, 502 S.W.3d at 107. To be sure, for an issue to have been "actually litigated" under Tennessee law, it need not "have been litigated in a full evidentiary and adversarial trial." *Mullins*, 294 S.W.3d at 536. But the issue must have been "properly raised by the pleadings or otherwise placed in issue" and "actually determined in the prior proceeding." *Id.* And here, the government has not shown that Jones raised any Fourth Amendment challenge to the Tennessee Warrants in the prior state case, much less that resolution of this Fourth Amendment issue was "necessary to the judgment." *Id.*

## C.

The government does not argue that it has satisfied the requirements for issue preclusion under Tennessee law. Instead, it relies on dicta in our decision in *Gregg* to argue that Jones's Fourth Amendment challenge is foreclosed because

"[t]he evidence recovered during the Tennessee state investigation is precisely the same evidence that Jones seeks to suppress now in these federal court proceedings." Gov't Br. 12. It is unclear whether the government intends to argue that issue preclusion, waiver, or some other legal principle applies to bar Jones's challenge.[8] In any event, for the reasons discussed below, we are not persuaded.

At the outset, our decision in *Gregg* relies heavily on the Supreme Court's decision in *Haring v. Prosise*, 462 U.S. 306 (1983). *See Gregg*, 463 F.3d at 164–66. And *Prosise* fully supports our conclusion that Jones's guilty plea in Tennessee does not preclude his Fourth Amendment challenge here. In that case, Prosise pleaded guilty to manufacturing a controlled substance after Virginia police officers found incriminating evidence during a search of his apartment. *Prosise*, 462 U.S. at 308–09. He subsequently sued the officers for violating his Fourth Amendments rights under § 1983. The officers argued that Prosise's guilty plea precluded him from raising a Fourth Amendment claim in his civil case. *Id*. at 309–10.

---

[8] The government argued before the magistrate judge that Jones "has waived and abandoned his Fourth Amendment rights with respect to the specific evidence at issue." *R&R*, 2019 U.S. Dist. LEXIS 101810, at *5. The magistrate judge specifically rejected that argument but held that Jones was "collaterally estopped" from challenging the Tennessee Warrants under *Gregg*. *Id.* The district court similarly held that "under principles of collateral estoppel, [Jones] is now barred" from challenging the Tennessee Warrants in this case. *Jones*, 2019 U.S. Dist. LEXIS 101507, at *7.

20

After reviewing the requirements for issue preclusion under Virginia law—which are the same as those under Tennessee law in all respects relevant here—the Supreme Court rejected the officers' argument. The Court noted that no Fourth Amendment issue was litigated in the criminal proceeding or was "essential" to Prosise's guilty plea and that the criminal court did not actually decide against Prosise on any issue on which he had to prevail to establish his § 1983 claim. *Id.* at 316. Observing that a defendant's guilty plea may have any number of motivations, the Court similarly rejected the arguments that, by pleading guilty, Prosise had admitted that the search of his apartment was lawful under the Fourth Amendment or had waived any claim involving an antecedent Fourth Amendment violation. *Id.* at 318–20; *see also* 18 Wright, Miller & Cooper, supra, § 4474.1 (noting that "a rational person" might "prefer the consequences of pleading guilty to the costs and uncertainties of enduring through trial").

*Prosise*'s analysis fits this case like a glove. Jones's guilty plea does not satisfy the requirements for issue preclusion under Tennessee law. Nor did Jones's plea "constitute[] an admission" that the Tennessee Warrants were proper or a "waiver" of Jones's Fourth Amendment claim in a subsequent case. *Prosise*, 462 U.S. at 318–20.

21

*Gregg*, which applied *Prosise* in the criminal context, supports this conclusion. There, New York City police officers arrested Gregg, a felon, after he illegally used his mother's "disability fare Metrocard." *Gregg*, 463 F.3d at 162. An arresting officer searched Gregg incident to his arrest and discovered a firearm. *Id*. Gregg pleaded guilty in New York state court to criminal impersonation in the second degree and served a 15-day sentence. *Id*. A federal grand jury subsequently indicted him on a felon-in-possession charge. *Id*. The district court concluded that Gregg had waived any Fourth Amendment challenge in his federal firearms case by pleading guilty to criminal impersonation in state court. But we *rejected* that determination:

> Just as the Court determined in *Prosise* that the defendant's guilty plea did not preclude him from seeking § 1983 damages for an alleged Fourth Amendment violation that was never considered in the state criminal proceedings, . . . Gregg should not have been barred—under either waiver or collateral estoppel principles—from challenging the seizure of the gun on Fourth Amendment grounds. The legality of the firearm seizure was not at issue when Gregg pleaded guilty to criminal impersonation.

*Id*. at 165–66.

The government contends that this analysis from *Gregg* is inapplicable because Jones seeks in this federal case to suppress the very same evidence recovered

22

during the Tennessee state investigation, barring any challenge to the Tennessee

Warrants. In so arguing, the government relies on the following dicta from *Gregg*:

> Were Gregg challenging law enforcement's conduct leading up to his surrender of his mother's Metrocard, i.e., the discovery of the evidence supporting the criminal impersonation charge to which he pled guilty, then . . . Gregg's Fourth Amendment claims would be foreclosed. This is because the plea conclusively establishes his factual guilt on the impersonation charge; how the supporting evidence was recovered is irrelevant. That is not the case here. In the instant case, Gregg challenges law enforcement's seizure of the firearm *after* the recovery of the misused Metrocard. Therefore, the validity of Gregg's criminal impersonation conviction could not be affected by the alleged Fourth Amendment violations he asserted on the federal felon-in-possession charge.

*Id.* at 166.[9]

We disagree with *Gregg*'s dictum that if Gregg had "challeng[ed] law en-

forcement's conduct leading up to . . . the discovery of the evidence supporting the

criminal impersonation charge to which he pled guilty, then . . . Gregg's Fourth

Amendment claims would be foreclosed." 463 F.3d at 166. *Gregg* relied mainly on

the Supreme Court's decision in *Tollett v. Henderson*, 411 U.S. 258 (1973), for this

---

[9] *Gregg*'s discussion of this issue was dicta because it addresses law enforcement conduct that occurred before the discovery of the weapon, and Gregg did not even challenge that conduct. Thus, the discussion was not necessary to *Gregg*'s holding. *See Gregg*, 463 F.3d at 166.

assertion, but that case is inapposite. In *Tollett*, the Supreme Court held that a *habeas petitioner* who had pleaded guilty could not collaterally challenge his *conviction* on Fourth Amendment grounds. *Id.* at 266–68. Citing *Tollett*, *Prosise* explained that "a Fourth Amendment claim ordinarily may not be raised in a habeas proceeding following a plea of guilty." 462 U.S. at 321. "[W]hen a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of *that conviction* cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized." *Id.* (emphasis added). This conclusion "does not rest on any notion of waiver" or issue preclusion, however, "but . . . on the simple fact that the [Fourth Amendment] claim is irrelevant to the constitutional validity of the conviction." *Id.*

*Gregg*'s overall analysis reaffirms this principle. We there concluded that "the validity of Gregg's *criminal impersonation conviction* could not be affected by the alleged Fourth Amendment violations" because he pleaded guilty to that offense. *Id.* (emphasis added). The same is true for Jones. He could not have attacked the Tennessee Warrants on habeas review *of his Tennessee conviction* because his guilty plea conclusively established his guilt as to that offense.

24

But that principle does not foreclose Jones's Fourth Amendment challenge here because Jones is not challenging his Tennessee conviction. True, "[b]y pleading guilty to the state offense, [Jones] made a factual admission *in that case* that he committed the charged state offense, thereby waiving any Fourth Amendment claim that the state illegally seized his gun as evidence in *that state prosecution*." *United States v. Farmer*, 770 F.3d 1363, 1367 (10th Cir. 2014) (citing *Prosise*, 462 U.S. at 321–23). But Jones's "guilty plea did not waive his right to challenge the validity of the search underlying his state conviction *in other contexts*." *Id.* at 1366–67 (citing *Prosise*, 462 U.S. at 308, 319–22); *see Hewins*, 760 S.E.2d at 820 ("[T]he waiver that results from the entry of a guilty plea is confined to the offense that is the subject of the plea."); *see also* 6 LaFave, *supra*, § 11.2(g) ("[I]f the state prosecution resulted in a plea of guilty (meaning the validity of *that* conviction is unaffected by any alleged Fourth Amendment violation), such a 'counseled guilty plea will not waive defendant's right to collaterally challenge alleged Fourth Amendment violations' in a subsequent federal prosecution arising out of the same event." (quoting *Gregg*, 463 F.3d at 166)). To the extent that the dicta in *Gregg* on which the government relies suggests otherwise, we decline to adopt it here.

Indeed, the totality of *Gregg*'s reasoning only confirms that Jones is not precluded from challenging the Tennessee Warrants in this case. *Gregg* concluded that the defendant there "should not have been barred—under either waiver or collateral estoppel principles—from challenging the seizure of the gun on Fourth Amendment grounds" because the issue "was never considered in the state criminal proceedings." 463 F.3d at 165–66. And the panel emphasized that it published an opinion on the subject to reject the "broad 'waiver' proposition adopted by the district court." *Id.* at 163. On balance, *Gregg* strongly supports our conclusion that Jones is not collaterally estopped from challenging the Tennessee Warrants.

## II.

We next turn to address the merits of Jones's motion to suppress. The district court denied Jones's motion because, even assuming that Jones was not precluded from challenging the Tennessee Warrants, the good-faith exception to the exclusionary rule applies. *Jones*, 2019 U.S. Dist. LEXIS 101507, at *7–8. We agree.

### A.

#### 1.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and prohibits the issuance of warrants without "probable cause, supported

by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). The Amendment's "text makes clear" that "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Lange v. California*, 141 S. Ct. 2011, 2017 (2021).

When the police undertake a search "to discover evidence of criminal wrongdoing, reasonableness generally requires the obtaining of a judicial warrant." *Riley v. California*, 573 U.S. 373, 382 (2014). Warrants "ensure[] that the inferences to support a search are drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Id.* Because warrants must be "supported by probable cause," *Carpenter*, 138 S. Ct. at 2213, warrants not so supported are "invalid," *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015).

"Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). To determine whether probable cause to search exists, an issuing magistrate must "make

27

a practical, common-sense decision whether, given all the circumstances set forth in [an] affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *accord United States v. Boles*, 914 F.3d 95, 102 (2d Cir. 2019). "Because probable cause 'deals with probabilities and depends on the totality of the circumstances,' it is a 'fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules.'" *Wesby*, 138 S. Ct. at 586 (first quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003), then quoting *Gates*, 462 U.S. at 232). Probable cause is a "practical," "common-sensical," and "all-things-considered" standard. *Florida v. Harris*, 568 U.S. 237, 244 (2013); *see also Wesby*, 138 S. Ct. at 587 (holding that probable cause permits law enforcement to draw "common-sense conclusions about human behavior" (quoting *Gates*, 562 U.S. at 231)). It "requires only the 'kind of fair probability' on which 'reasonable and prudent people, not legal technicians, act.'" *Kaley*, 571 U.S. at 338 (quoting *Harris*, 568 U.S. at 244).

"On appeal from a district court's ruling on a suppression motion, we review a district court's findings of fact for clear error, and its resolution of questions of law and mixed questions of law and fact *de novo*." *United States v. Eldred*, 933 F.3d 110, 114 (2d Cir. 2019). But in the context of a warrant-based search, "[w]e

28

accord substantial deference to the finding of an issuing judicial officer that probable cause exists, limiting our inquiry to whether the officer had a substantial basis for his determination." *Boles*, 914 F.3d at 102; *see also McLane Co. v. EEOC*, 137 S. Ct. 1159, 1169 (2017) ("[C]ourts should pay 'great deference' to a magistrate judge's determination of probable cause." (quoting *Gates*, 462 U.S. at 236)). "This degree of deference derives from a concern that 'a grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.'" *United States v. Thomas*, 788 F.3d 345, 350 (2d Cir. 2015) (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)).

**2.**

On appeal, Jones argues that the Tennessee Warrants were not supported by probable cause. We are dubious. As set forth in Detective Brooks's affidavits, the Complainant reported that Jones plied her daughter and her daughter's friend—both underage and both of whom she identified by name—with alcohol and drugs, took nude photographs of them, and made sexual advances toward them. This statement at least arguably establishes "a fair probability that . . . evidence of a crime" would be found on Jones's devices. *Gates*, 462 U.S. at 238.

29

Jones objects that Detective Brooks's affidavits do not provide adequate corroboration for these allegations. But State Victim 1's mother "was a person known to law enforcement officers and not an anonymous tipster, a circumstance that we have recognized weighs in favor of reliability." *McColley v. County of Rensselaer*, 740 F.3d 817, 842 (2d Cir. 2014) (Raggi, *J.*, dissenting) (citing *United States v. Elmore*, 482 F.3d 172, 180–81 (2d Cir. 2007) (explaining that information from a known informant is entitled to greater weight because, among other things, a known informant "runs a greater risk that he will be held accountable if his information proves false"); *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004) (similar)); *see also United States v. Salazar*, 945 F.2d 47, 50–51 (2d Cir. 1991) (similar).

Jones also objects that the Tennessee Warrants do not spell out the basis for the Complainant's knowledge. But that objection gives short shrift to the "common-sensical" nature of the probable cause inquiry. *Harris*, 568 U.S. at 244. We think it was at least arguably reasonable for the issuing magistrate to draw the common-sense inference that State Victim 1's mother *spoke with her daughter* about Jones's behavior. Though a "legal technician" could still object (as Jones does) that this proposition is not made explicit in the warrant application, we believe a "reasonable and prudent" person might well conclude that the Complainant's

statements nevertheless clear the low threshold for probable cause, *see Kaley*, 571 U.S. at 338—or, more to the point, that the issuing magistrate had a substantial basis for so concluding. *See Gates*, 462 U.S. at 236 (noting "great deference" owed to the issuing judge's probable cause assessment).

At any rate, we need not resolve the probable cause issue. This is because, as set forth below, we agree with the district court that the good-faith exception to the exclusionary rule applies.

**B.**

**1.**

"Even where a warrant was issued without probable cause in violation of the Fourth Amendment, suppression of the evidence is not automatic." *Boles*, 914 F.3d at 103. The exclusionary rule is a "judicially created" doctrine, *Herring v. United States*, 555 U.S. 135, 139 (2009), that is "prudential" rather than constitutionally mandated, *Davis v. United States*, 564 U.S. 229, 236 (2011); *accord Collins v. Virginia*, 138 S. Ct. 1663, 1678 (2018) (Thomas, *J.*, concurring) (quoting *Penn. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363 (1998)). It therefore applies "only where its deterrence benefits outweigh its substantial social costs." *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)); *see also United States v. Hightower*, 950 F.3d 33, 36 (2d Cir. 2020) ("Because the rule is prudential

31

rather than constitutionally mandated, it is applicable only where its deterrence benefits outweigh its substantial social costs." (quoting *Scott*, 524 U.S. at 363)). "The extent to which the exclusionary rule is justified by deterrence principles varies with the culpability of the law enforcement conduct." *Herring*, 555 U.S. at 143; *accord Eldred*, 933 F.3d at 119. The exclusionary rule seeks to deter "intentional conduct that [is] patently unconstitutional.'" *Herring*, 555 U.S. at 143; *accord Lange*, 141 S. Ct. at 2027 (Thomas, *J.*, concurring). Because the exclusionary rule "exacts a heavy toll" on the justice system, *Davis*, 564 U.S. at 237, it applies only to deter law enforcement's "deliberate, reckless, or grossly negligent conduct," *Herring*, 555 U.S. at 144; *accord Boles*, 914 F.3d at 103. "[P]olice conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144; *accord In re 650 Fifth Ave.*, 934 F.3d 147, 162 (2d Cir. 2019).

In accord with these principles, the "good-faith exception" to the exclusionary rule applies when the agents executing a search warrant "act with an objectively reasonable good-faith belief that their conduct is lawful." *Davis*, 564 U.S. at 238; *accord Eldred*, 933 F.3d at 118. It applies when the government acts in "objectively reasonable reliance on a subsequently invalidated search warrant." *United*

*States v. Leon*, 468 U.S. 897, 922 (1984); *accord In re 650 Fifth Ave.*, 934 F.3d at 162.

"[W]hen an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope, . . . there is [generally] no police illegality and thus nothing to deter." *Leon*, 468 U.S. at 920–21; *accord Purcell*, 967 F.3d at 179; *Boles*, 914 F.3d at 103. The exclusionary rule has minimal deterrent benefit in such cases because "the error rests with the issuing magistrate, not the police officer." *Davis*, 564 U.S. at 239; *accord In re 650 Fifth Ave.*, 934 F.3d at 162. And "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 921; *accord Purcell*, 967 F.3d at 179; *see also Davis*, 564 U.S. at 239 ("[P]unishing the errors of judges is not the office of the exclusionary rule." (quoting *Leon*, 468 U.S. at 916)).

"For an officer to be able to claim the benefits of the good faith exception, however, his reliance on a warrant must be objectively reasonable." *Boles*, 914 F.3d at 103 (citing *Leon*, 468 U.S. at 922).

> [T]he Supreme Court in *Leon* delineated several situations in which the good-faith exception does *not* apply:
>
> (1) the magistrate or judge "was misled by information in an affidavit that the affiant knew was false or would

have known was false except for his reckless disregard of the truth";

(2) "where the issuing magistrate wholly abandoned his judicial role";

(3) a warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and

(4) a warrant is so "facially deficient" that officers "cannot reasonably presume it to be valid."

*Eldred*, 933 F.3d at 118 (quoting *Leon*, 468 U.S. at 923); *see also Boles*, 914 F.3d at 103.

"[W]e review a district court's determination to apply the good-faith exception based on an officer's reliance on an issued warrant *de novo*." *Eldred*, 933 F.3d at 114.

**2.**

The district court correctly applied the good-faith exception in this case. As we have already explained, there was at least arguable probable cause for the Tennessee Warrants. We therefore conclude that Detective Brooks acted based on an "'objectively reasonable good-faith belief' that [his] conduct [was] lawful." *Id.* at 118 (quoting *Davis*, 564 U.S. at 238). Jones argues that the good-faith exception does not apply here based on the third category enumerated above—that the Tennessee "warrant[s] [were] based on an affidavit 'so lacking in indicia of probable

34

cause as to render official belief in its existence entirely unreasonable.'" *Id.* (quoting *Leon*, 468 U.S. at 923). We disagree.

This issue "most frequently arises when affidavits are bare bones"—that is, when they are "totally devoid of factual circumstances to support conclusory allegations." *United States v. Clark*, 638 F.3d 89, 103 (2d Cir. 2011). We have emphasized that this is "a very difficult threshold to meet." *United States v. Falso*, 544 F.3d 110, 128 n.24 (2d Cir. 2008) (Sotomayor, *J.*). The affidavits at issue here are not so devoid of factual support because they detail allegations from State Victim 1's mother that support the common-sense inference that her daughter told her that Jones took nude photographs of her.

Nor would the benefits of applying the exclusionary rule here "outweigh its substantial social costs." *Strieff*, 579 U.S. at 237. Before Detective Brooks sought the Tennessee Warrants, he received signed statements from both victims corroborating the Complainant's allegations. Detective Brooks could have used those statements to strengthen a renewed warrant application if Judge Dugger had demanded additional corroboration. For that reason, exclusion here would amount to "penalizing the officer for the magistrate's error," *Purcell*, 967 F.3d at 179

(quoting *Leon*, 468 U.S. at 921), which is "not the office of the exclusionary rule," *In re 650 Fifth Ave.*, 934 F.3d at 162 (quoting *Davis*, 564 U.S. at 239).

For similar reasons, Detective Brooks's behavior was not the sort of "'deliberate, reckless, or grossly negligent conduct'" that justifies the exclusionary rule's "heavy toll on the justice system." *Boles*, 914 F.3d at 103 (quoting *Herring*, 555 U.S. at 144). His conduct was neither "sufficiently deliberate that exclusion can meaningfully deter it" nor "sufficiently culpable that such deterrence is worth the price paid by the justice system." *In re 650 Fifth Ave.*, 934 F.3d at 162 (quoting *Herring*, 555 U.S. at 144). In this case, "exclusion cannot pay its way." *Eldred*, 933 F.3d at 118 (quoting *Davis*, 564 U.S. at 238).

## CONCLUSION

We have considered Jones's remaining arguments and conclude that they lack merit. We therefore AFFIRM the judgment of the district court.