22-2378-cr
*United States v. Richards*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of December, two thousand twenty-three.

Present:

> DENNIS JACOBS,
> ROBERT D. SACK,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                                                  22-2378-cr

JEFFREY RICHARDS,

*Defendant-Appellant.*

_____

For Appellee:                      Katherine A. Gregory, Assistant United States Attorney, *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY

For Defendant-Appellant:       Michael J. Stachowski, Buffalo, NY

Appeal from a judgment of the United States District Court for the Western District of New York (John L. Sinatra, Jr., *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Jeffrey Richards appeals from a judgment of the United States District Court for the Western District of New York (John L. Sinatra, Jr., *District Judge*), entered on September 23, 2022, sentencing Richards principally to 204 months of imprisonment, to be followed by five years of supervised release.  Richards pled guilty to one count of possession with intent to distribute acetyl fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  As permitted by the terms of his plea agreement, Richards now appeals the denial of his motion to suppress the firearm that formed the basis for the § 924(c) charge as well as his above-Guidelines sentence.  We assume the parties' familiarity with the case.

### I. Motion to Suppress

"On appeal from a district court's ruling on a suppression motion, we review a district court's findings of fact for clear error, and its resolution of questions of law and mixed questions of law and fact *de novo*."  *United States v. Jones*, 43 F.4th 94, 109 (2d Cir. 2022).[1]  The district court held that the officers who arrested Richards on December 14, 2018, and found a firearm under the front seat of the vehicle he had been driving did not violate Richards's Fourth Amendment rights on two alternative grounds.  First, the district court held that the officers had probable cause to arrest Richards when they first encountered him.  Alternatively, the district court held that the "officers had reasonable suspicion to conduct an investigatory stop of Richards when

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alteration marks, footnotes, and citations.

they first encountered him, and probable cause to arrest him arose when officers discovered the firearm, in plain view, during the course of the lawful investigatory stop." J.A. at 268.

On appeal, Richards argues that the officers did not have probable cause to arrest him when they first encountered him, and therefore that the gun recovered during the search incident to his arrest should have been suppressed; he does not contest the district court's alternative holding that even if the officers did not have probable cause to arrest him initially, they at least had reasonable suspicion to conduct an investigatory stop. We therefore consider any challenge to the district court's ruling regarding the investigatory stop to be forfeited. *See Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 107 (2d Cir. 2022). Even so, considering the merits of the district court's decision, we agree with the district court that the officers had reasonable suspicion to conduct an investigatory stop of Richards, and in the course of the investigatory stop, observed the firearm in plain view.

"[A] brief investigatory stop may sometimes reasonably be conducted in the absence of a warrant and even of the probable cause required for a lawful arrest." *United States v. Patterson*, 25 F.4th 123, 135 (2d Cir. 2022).

> For circumstances to warrant an investigatory stop, law enforcement officials must have a reasonable basis to think that the person to be detained is committing or has committed a criminal offense. . . . [W]hile reasonable suspicion requires more than a hunch, it is satisfied as long as authorities can point to specific and articulable facts which, taken together with rational inferences from those facts, provide a particularized and objective basis for suspecting legal wrongdoing.

*Id.* at 135–36. Here, the officers had reasonable suspicion to suspect that Richards was engaged in ongoing criminal activity. The officers had recently conducted a controlled purchase of narcotics during which they observed a drug dealer obtain narcotics from Richards's home. Furthermore, one of the officers testified that he had "fresh" information that Richards always

3

carried a firearm when he left his home, J.A. at 131, testimony that the district court found to be "wholly credible," *id.* at 264. Based on these specific and articulable facts, the officers had reasonable suspicion that, when Richards left his home on the evening of December 14, he was engaged in criminal activity by possessing a firearm in furtherance of drug trafficking. *See, e.g.*, *United States v. Bailey*, 743 F.3d 322, 333 (2d Cir. 2014).[2]

Once the officers were conducting the investigatory stop, they observed the firearm in plain view. Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 374–75 (1993). As discussed above, the investigatory stop here was lawful, so the officers were permitted to order Richards to get out of the car. *See United States v. Weaver*, 9 F.4th 129, 143 (2d Cir. 2021) (en banc). An officer "credibly testified" that once Richards got out, while the car door was still open, he "observed part of a firearm in plain view on the floor of the driver's seat" "while looking into the front seat of the vehicle from the parking lot," which is confirmed by video footage. J.A. at 276. Based on the district court's sound factual findings, the officers discovered the firearm in plain view and therefore could seize it without a warrant. Because the officers did not violate Richards's Fourth Amendment rights in either how they stopped him or

---

[2] As Richards has not challenged the legality of the investigatory stop, we need not address whether the manner in which the officers conducted the investigatory stop turned it into a *de facto* arrest. *See Patterson*, 25 F.4th at 140. We note, however, that this Court has repeatedly held that the use of force in the course of an investigatory stop when it is reasonable for the officers to believe that the suspect poses a present physical threat does not transform the investigatory stop into a *de facto* arrest. This includes pointing a firearm at the stopped vehicle, *see, e.g.*, *id.* at 144–45, handcuffing the suspect, *see, e.g.*, *United States v. Fiseku*, 906 F.3d 65, 74–75 (2d Cir. 2018); *Grice v. McVeigh*, 873 F.3d 162, 167–68 (2d Cir. 2017); *United States v. Vargas*, 369 F.3d 98, 102 (2d Cir. 2004), carrying out the stop with a number of officers greater than the number of suspects, *see, e.g.*, *Patterson*, 25 F.4th at 144 (four officers versus two suspects); *United States v. Newton*, 369 F.3d 659, 675 (2d Cir. 2004) (six officers versus one suspect), and detaining the suspect for a relatively long period of time, *see, e.g.*, *Grice*, 873 F.3d at 168 (thirty-three minutes); *Bailey*, 743 F.3d at 338–39 (ten minutes); *United States v. Tehrani*, 49 F.3d 54, 61 (2d Cir. 1995) (thirty minutes).

how they found the firearm, the district court correctly concluded that the firearm did not need to be suppressed.

## II.    Sentence

Richards also argues on appeal that his sentence was procedurally and substantively unreasonable.  In reviewing a sentence for reasonableness, "[t]he procedural inquiry focuses primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a), while the substantive inquiry assesses the length of the sentence imposed in light of the § 3553(a) factors."  *United States v. Richardson*, 958 F.3d 151, 153 (2d Cir. 2020).

Beginning with procedural reasonableness, Richards argues that the district court committed several procedural errors at sentencing, including imposing a sentence above the Sentencing Guidelines' advisory sentence of 180 months of imprisonment, not considering the § 3553(a) factors, and not explaining the reasons for its sentence.  We disagree.  First, the Sentencing Guidelines are not mandatory, *see United States v. Booker*, 543 U.S. 220, 227 (2005); *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc), and therefore, Richards's argument that the district court committed procedural error simply by imposing an upward variance is meritless.

Second, the district court considered the § 3553(a) factors and explained its reasons for the sentence it imposed, including the upward variance.  The district court said that it had "considered the factors set forth in the sentencing statute" and imposed the sentence because (1) "law enforcement found significant quantities of drugs" and "drug packaging and processing materials" in Richards's home; (2) "[l]aw enforcement also recovered numerous firearms and ammunition at the residence, along with a stolen firearm located in the vehicle at the time of [Richards's] arrest,"

5

which "pose[d] a grave danger to the community"; (3) "officers became ill at [Richards's] residence" from the presence of fentanyl there when they executed the search warrant; and (4) Richards created a destructive device meant to explode "with some malicious intent to have it hurt people." J.A. at 485–86. In determining the effect of any mitigating factors, the district court considered Richards's "personal history and characteristics," including his "struggles with [his] mental health from a young age," "history of substance abuse," absence of prior criminal history, and acceptance of responsibility. *Id.* at 486–87. The district court therefore followed the proper procedures in imposing the sentence.

Turning to substantive reasonableness, the 204-month sentence was not "manifestly unjust." *Richardson*, 958 F.3d at 153–54. "The particular weight to be afforded aggravating and mitigating factors is a matter firmly committed to the discretion of the sentencing judge, with appellate courts seeking to ensure only that a factor can bear the weight assigned it under the totality of circumstances in the case." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012). Here, the various factors the district court considered—including the fact that Richards attempted to build a bomb in an apartment building—can bear the weight assigned to them under the totality of circumstances. A 204-month sentence was within the range of permissible decisions and supportable as a matter of law. *See United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).

\* \* \*

For the reasons stated above, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

6