22-1077-cr
*United States v. Maldonado*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of October, two thousand twenty-four.

Present:

> AMALYA L. KEARSE,
> GERARD E. LYNCH,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.            22-1077-cr

JUNNY TORICES MALDONADO, AKA MARIO VAZQUEZ, AKA JUNNY MALDONADO-AGUIL,

*Defendant-Appellant*.

_____

| | |
|---|---|
| For Appellee: | NICHOLAS J. MOSCOW (Andrew D. Grubin, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY |
| For Defendant-Appellant: | MICHAEL O. HUESTON, Brooklyn, NY |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Carol Bagley Amon, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Junny Torices Maldonado appeals from a judgment of the United States District Court for the Eastern District of New York (Carol Bagley Amon, *District Judge*), entered on May 11, 2022, convicting him, following a jury trial, of illegally reentering the United States after being deported for a felony conviction, in violation of 8 U.S.C. §§ 1326(a) and (b)(1). Maldonado was sentenced to four months of imprisonment, to be followed by three years of supervised release. He has completed his term of imprisonment, and now appeals his conviction. We assume the parties' familiarity with the case.

### I.  Rule 29 Motion

Following his trial, which ended in January 2020, Maldonado moved on January 10, 2022, for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the evidence was insufficient to sustain his conviction. The district court denied the motion as both untimely and meritless. We need not address its timeliness, because in any event, we agree that the motion is meritless.

"We review the denial of a Rule 29 motion *de novo*, viewing the evidence in the light most favorable to the government." *United States v. Pizzonia*, 577 F.3d 455, 462 (2d Cir. 2009).[1]  A judgment of acquittal may be granted only if "no rational trier of fact could have found the

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alteration marks, footnotes, and citations.

2

defendant guilty beyond a reasonable doubt." *United States v. Cassese*, 428 F.3d 92, 98 (2d Cir. 2005).

The only issue contested at trial was whether Maldonado had, in fact, been removed to Mexico in 2005 following a felony conviction for second-degree attempted robbery. The government provided sufficient evidence on that point. For example, the government presented evidence that Maldonado orally confessed to his 2005 removal following his 2018 arrest. Although Maldonado argues that his confession was ambiguous, the jury could have reasonably interpreted Maldonado's confession to mean that he had been removed, and we must "credit[] every inference that the jury might have drawn in favor of the government." *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004). Furthermore, the government presented official records of Maldonado's removal and the testimony of two Immigration and Customs Enforcement officers who were present for Maldonado's removal process, which, when viewed in the light most favorable to the government, were sufficient to permit a rational jury to conclude beyond a reasonable doubt that Maldonado was placed on a plane to Texas, and then, once in Texas, removed over the Mexican border. Thus, Maldonado has not carried his "heavy burden" of showing that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gahagen*, 44 F.4th 99, 108 (2d Cir. 2022).

## II.    Rule 33 Motion

After his trial, Maldonado also moved pursuant to Federal Rule of Criminal Procedure 33 for a new trial, arguing that the district court gave a coercive jury charge and that his counsel was ineffective for not objecting to it. The district court denied the motion as both untimely and meritless. As with the Rule 29 motion, we need not address the timeliness of Maldonado's Rule 33 motion, because we agree with the district court that the motion is meritless.

As relevant here, approximately three and a half hours after the jury started deliberating, the jury submitted a note to the district court, which read: "Unable at this time to come to some kind of agreement," and underneath that, "No accountability from the officer because they cannot figure out who witnessed defendant crossing border. No paper trail after Jersey." App'x at 837. After receiving the note, the district court said to the jury:

> Here's my proposal: I will adjourn the proceedings today at five o'clock. If there has not been a verdict by five o'clock, and I don't want you to rush any decisions, this is not saying you need to reach a verdict by then, that is not at all what I'm saying. It just seems to be that you appear to be a little tired today and that's why I would end the proceedings at five o'clock. What we'll do is come back tomorrow, but at five o'clock, I will adjourn the proceedings for the day and then if there's no verdict by then—and again, I will inform you, I'm not rushing you, I'm not suggesting that you reach a verdict. It's very important that you consider all the testimony, but you haven't been deliberating all that long, so I would conclude at five o'clock today and we would come back tomorrow morning at 9:30, just to let you know what the planning is, and this is with no intention to tell you that you should reach a verdict by then or should not reach a verdict by then. I'm not intending to do that.

> So I'm just going to send you back to resume your deliberations and I will bring you out at 5:00 and we will see where we go from there, so you are excused to continue your deliberations.

*Id.* at 837–38. Approximately one hour later, the jury reached a guilty verdict.

On appeal, Maldonado maintains that the district court's comments to the jury amounted to a modified *Allen* charge, *see Allen v. United States*, 164 U.S. 492 (1896), that was coercive because it lacked sufficient mitigating language. "We review challenges to a district court's denial of a Rule 33 motion for an abuse of discretion and accept the district court's factual findings unless they are clearly erroneous." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009). Upon review of the record, we discern no error.

4

First, the district court's statement to the jury, which focused almost entirely on scheduling, was not even remotely an *Allen* charge. "The *Allen* charge today comes in two versions: a 'traditional' charge that urges minority jurors to reconsider their views in light of the majority, and a more even-handed 'modified' charge that asks all jurors—minority and majority—to reexamine their own views and consider the views of others." *United States v. McDonald*, 759 F.3d 220, 224 n.4 (2d Cir. 2014). In either case, the "defining characteristic" of an *Allen* charge "is that it asks jurors to reexamine their own views and the views of others." *Id.* at 224. Here, in explaining the schedule to the jury, the district court did not ask the jurors to reexamine their own views or the views of others. At most, the district court briefly advised the jurors that "[i]t's very important that [they] consider all the *testimony*," App'x at 838 (emphasis added), not how to consider each other's views. The district court's overall statements were aimed almost entirely at the schedule for continued deliberations. A judge's simple request that the jury continue deliberating, devoid of any suggestion that jurors should reconsider their views or the views of others, cannot be properly considered an *Allen* charge. *See McDonald*, 759 F.3d at 224; *Spears v. Greiner*, 459 F.3d 200, 204 n.3 (2d Cir. 2006) (noting that several "[c]ourts have found that a key aspect of an *Allen* charge is that it asks jurors to reexamine their own views and the views of others") (collecting cases). Because the district court did not give the jury a modified *Allen* charge, it was not required to add "mitigating language" regarding maintaining "conscientiously held beliefs." *McDonald*, 759 F.3d at 225.

Second, the district court's comments cannot be read as coercive. "When a trial judge issues a supplemental instruction to a divided jury, its propriety turns, at least in part, on whether the charge tends to coerce undecided jurors into reaching a verdict—that is, whether the charge encourages jurors to abandon, without any principled reason, doubts that any juror conscientiously

5

holds as to a defendant's guilt." *Id.* at 223. We "consider the supplemental charge given by the trial court in its context and under all the circumstances." *Id.* Here, the district court repeatedly cautioned the jurors that it was not putting pressure on them to reach a verdict. *See* App'x at 837–38 ("I don't want you to rush any decisions"; "this is not saying you need to reach a verdict by [5:00 pm], that is not at all what I'm saying"; "again, I will inform you, I'm not rushing you, I'm not suggesting that you reach a verdict"; and "this is with no intention to tell you that you should reach a verdict by [5:00 pm] or should not reach a verdict by then."). In light of the plain and easily understood language used, the district court did not abuse its discretion in determining that its brief comments were not coercive and that a new trial was not necessary because of them. Moreover, because the court's remarks were wholly reasonable, Maldonado's counsel was not ineffective for failing to object to them. *See, e.g.*, *United States v. Cohen*, 427 F.3d 164, 172 (2d Cir. 2005) ("Absent actual error in the District Court's instruction, . . . trial counsel's failure to object to the jury charge did not constitute ineffective assistance of counsel.").

### III.    Rule 12(b) Motion

Maldonado's final post-trial motion was pursuant to Federal Rule of Criminal Procedure 12(b), seeking to dismiss the indictment on the grounds that (1) the immigration court lacked jurisdiction to remove him and (2) the statute under which he was convicted, 8 U.S.C. § 1326, violates his constitutional right to equal protection under the Fifth Amendment. The district court denied the jurisdictional argument on the merits and denied the constitutional argument both as untimely and on the merits.

We review *de novo* Maldonado's legal argument that the immigration court lacked jurisdiction to remove him. *See Chery v. Garland*, 16 F.4th 980, 983 (2d Cir. 2021). Maldonado argues that the immigration court lacked jurisdiction to remove him because his Notice to Appear

6

("NTA") did not specify a date and time to appear. This argument is directly foreclosed by this Court's precedent. Specifically, in *Banegas Gomez v. Barr*, this Court held that "an NTA that omits information regarding the time and date of the initial removal hearing is nevertheless adequate to vest jurisdiction in the Immigration Court, at least so long as a notice of hearing specifying this information is later sent to the alien." 922 F.3d 101, 112 (2d Cir. 2019). In this case, the information regarding the hearing was not later sent to Maldonado, because Maldonado pretermitted the need for a hearing by signing a Stipulated Request for Removal Order and Waiver of Hearing Form, but Maldonado does not argue that this factual difference matters. This Court has twice reaffirmed *Banegas Gomez*'s holding. *See United States v. Suquilanda*, 116 F.4th 129, 135–36 (2d Cir. 2024); *Chery*, 16 F.4th at 987. Accordingly, the immigration court that removed Maldonado had jurisdiction to do so. *See Banegas Gomez*, 922 F.3d at 111–12.

As for the second argument raised in Maldonado's Rule 12(b) motion—that § 1326 is unconstitutional—this Court recently rejected a substantially similar claim in *Suquilanda*, 116 F.4th at 138–39. Accordingly, Maldonado's challenge to § 1326 likewise fails.

### IV.    Motion to Suppress

Maldonado's last argument is that the district court improperly denied his pre-trial motion to suppress the evidence obtained as a result of an April 2018 traffic stop. "On appeal from a district court's ruling on a suppression motion, we review a district court's findings of fact for clear error, and its resolution of questions of law and mixed questions of law and fact *de novo*." *United States v. Jones*, 43 F.4th 94, 109 (2d Cir. 2022).

First, we conclude that the police officer who pulled over Maldonado, Deonarine Ragbar, was justified in conducting the traffic stop because he had reasonable suspicion that Maldonado was committing a traffic violation. "[A] traffic stop based on a reasonable suspicion of a traffic

7

violation comports with the Fourth Amendment." *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009). Ragbar testified that he saw that Maldonado's view was obstructed by items on top of the dashboard and on the rearview mirror, in violation of New York Vehicle & Traffic Law § 375(30). The district court found that Ragbar's testimony was credible, that Ragbar's account was not contradicted by any other evidence in the record, and indeed, that his account was partially confirmed by the video footage from his body camera, which shows objects on top of Maldonado's dashboard. Based on those sound factual findings, the district court did not err in finding that Ragbar had reasonable suspicion to conduct the traffic stop.

Second, Ragbar and the other officers who arrested Maldonado had probable cause to do so. "An officer has probable cause to arrest when he . . . has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed a crime." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013). Probable cause to arrest arose when Maldonado presented a fake Puerto Rican driver's license to Ragbar, in violation of New York Penal Law § 170.20 and New York Vehicle & Traffic Law § 509(1). The district court found that Ragbar credibly testified that, due to his familiarity with Puerto Rican licenses obtained in his prior employment as a Transportation Security Administration Officer responsible for reviewing air passengers' identification documents, he was able to immediately identify the license as fraudulent, a finding that was not clearly erroneous, which gave rise to probable cause to arrest on this basis. Because the officers had reasonable suspicion to conduct the traffic stop and probable cause to arrest Maldonado, no violations of the Fourth Amendment occurred, and the district court properly denied Maldonado's motion to suppress the evidence obtained from the traffic stop and arrest.

\*     \*     \*

We have considered all of Maldonado's remaining arguments and find them unpersuasive.

For the reasons stated above, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk